# FREDERICK C. STEINWEDEL *v.* WILLIAM F. HILBERT ET AL.

*Negligence—Injury to Salvage Corps Man—Unguarded Elevator Shaft—Baltimore City Ordinance.*

The owner or occupant of premises is under no common law duty to a fireman or salvage corps man, entering the premises to put out a fire, to exercise care to protect him from falling into an elevator shaft, by the erection of guards thereto.

pp. 121-125

In the "Elevator Code" of Baltimore City, approved June 16th, 1922, the provision allowing two years for the enclosure of existing shafts was controlling, and it was immaterial that the building inspector, authorized by such code to take action whenever the condition of an elevator rendered it dangerous to the public, had, previous to plaintiff's fall into defendant's shaft, which occurred within the two years, notified defendant to enclose the shaft, and that defendant had failed to do so.

pp. 125-127

The allegations of a pleading are, in case of doubt, to be construed against the pleader.        p. 126

*Decided November 6th, 1925.*

Appeal from the Superior Court of Baltimore City (FRANK, J.).

Action by Frederick G. Steinwedel against William F. Hilbert, individually and trading as the Baltimore Wire Works, and others. From a judgment for defendants, plaintiff appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*George S. Yost* and *Irving H. Mezger,* for the appellant.

*Henry H. Dinneen* and *Walter C. Mylander,* with whom were *Harry M. Benzinger* and *Charles M. Armstrong* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

This is an appeal, by the plaintiff in the court below, from a judgment entered against him on a demurrer to his second amended declaration. The plaintiff is a member, or employee, of the Fire Insurance Salvage Corps of Baltimore, charged with the duty of saving property endangered by fire, and he alleges that in the course of his duty he went upon premises occupied by the defendant Hilbert as tenant, and owned by the remaining defendants, where a fire had originated, and that while there he was injured by falling into an elevator shaft negligently left open and unguarded. The declaration charges negligence, (1) in failing to exercise ordinary care according to general common law principles, (2) in failing to comply with the requirement of elevator enclosures or guards contained in an ordinance of Baltimore City known as the "Elevator Code," made part of the declaration, and also (3) in failing to comply with specific orders by the inspector of buildings, acting under that code. The defendants, now the appellees, contend that none of them were under any duty at common law to exercise the care demanded for the benefit of one who comes on

the property in case of fire, to put the fire out or to save goods, and that whatever the correct principle may be in case of injury to a fireman, employed by the public fire department, a distinction must be drawn between that case and one of injury to an employee of the salvage corps, which is a private organization. In any event, it is urged, the salvage corps man is not in a position to demand such care from the owners or occupants of buildings. In reply to the contentions based on the provisions of the Elevator Code, it is argued that at the time of the accident the requirement of guards or enclosures about such shafts as this one had not yet become effective, and that orders of the inspector of buildings could, meanwhile, require only repairs to the elevator itself. A question whether the provisions of the Elevator Code could be construed as imposing duties toward firemen (see authorities collected in 13 *A. L. R.* 637, 641 and 647; *Thayer, Public Wrong and Private Action*, 27 *Harvard Law Rev.* 317), and also a question of possible distinction between the liability of landlords and that of tenants for injuries from an unguarded shaft, have both been ably argued by counsel for the parties on each side, but these questions we find it unnecessary to take up. We have come to the same conclusions as those announced by the judge of the trial court; that the defendants were not under any common law duty to the plaintiff to guard the elevator shaft, that the requirement of guards or enclosures in the Elevator Code did not at the time of the accident apply to such shafts as this one, and that, meanwhile, orders of the building inspector could require only repairs to the elevator; and these conclusions dispose of the claim of a right of recovery. They, also, render it unnecessary for us to discuss the distinction suggested between firemen and salvage corps men. See *Gibson v. Leonard*, 143 Ill. 182; *Cooley, Torts*, 348; *Proctor v. Adams*, 113 Mass. 376.

Both parties agree that according to the great weight of authorities the general rule of common law is that a fireman entering premises to put out fire is a licensee only, and

not an invitee, and that the owner or occupant of the premises is not under any duty of care to keep his premises prepared and safe for a fireman. Authorities collected in 30 L. R. A. (N. S.), 60, 13 A. L. R. 637, and Ann. Cas. 1914 B, 518. "He must take the property as he finds it, and is entitled only not to be led into danger, 'something like fraud.'" Pollock, Torts (11th ed.), 528. And the parties agree, also, that a salvage corps man is, at most, in no more favorable a position, under common law principles, than a fireman. But it is contended, for the appellant, that this formula based on the simple distinction between licensees and invitees has proved inadequate, and has been enlarged so as to allow rights of action for negligent injury to some persons who might be classed as no more than licensees; and that a reexamination of principles leads to the conclusion that a right of action exists in this case. The argument is supported, principally, by a reference to the case of Meiers v. Koch Brewery Co., 229 N. Y. 10. A study of that case and of the principles involved, made by Prof. Bohlen, is to be found in 69 Univ. of Pennsylvania Law Rev. 142, etc. There was a paved way on the brewery premises leading from the street to a barn or stable, and the way was designed for use both night and day, and was provided with lights. At a point 150 feet back on the way, the brewery company opened up a coal hole, extending across half the pavement. The barn caught fire at night, and, the lights being out, a fireman, responding to the alarm, fell into the hole and was injured. The court held that, since the owner of the premises had prepared this way, and kept it open for passage by night as well as by day, it was under a duty to keep the way lighted, so that any one lawfully using it might discover and avoid the unguarded coal hole. And, so, the fireman was held to have a right of action. The decision is carefully limited, in the court's opinion, to liability to persons rightfully using approaches prepared and left open for access to the property. Prof. Bohlen agrees with the decision on that limited ground, but thinks that, so limited, "the

case is not in direct conflict with any of the many cases which deny recovery to a fireman or policeman hurt while using an owner's roof as a platform from which to fight a fire, or over which to pursue a criminal, * * * or by falling into unguarded elevator shafts in a factory * * *." And he suggests that the decision might have been based on the ground of liability of an owner to a licensee for injury from something in the nature of a trap.    69 *Univ. of Pa. Law Rev.* 142, 353.    And see *Maenner v. Carroll,* 46 Md. 193, 222.

In this present case there is no allegation that the elevator shaft was opened in or near a way prepared and set apart as a passage way, and the case is not rested upon any such concealment or deceptive appearance, "something like fraud," put in the path of the plaintiff, as would render the danger a trap.    We are to decide, now, only whether upon common law principles the owners, or the tenant could be held liable to the injured firemen, or salvage corps man, for failing to exercise care to protect him from falling into an elevator shaft anywhere on the premises, while he is at work putting out a fire.    The New York case did not deal with that state of facts, and is not a precedent for it.    As has been said, the many cases which have dealt with it have almost unanimously held that there was no liability; and there seems to us to be, no tendency to discard or qualify the rule for exactly that situation, whatever tendency there may be in dealing with other cases.    The reasons for it need hardly be restated here. We need only say that we have seen no sufficient reason for departing from it in this case, and that we, therefore, have to decide against the appellant's contention for liability on common law principles—deferring up to this point consideration of the provisions of the Elevator Code.

The Elevator Code spoken of is embodied in an ordinance of the Mayor and City Council of Baltimore, No. 717, approved June 16th, 1922.    There had been a previous ordinance on the same subject, No. 155, approved June 8th, 1908, but the ordinance of 1922 expressly repealed and re-enacted

the older one, without any saving clause continuing the provisions of the latter in effect, and, in addition, dealt specifically with the subject of enclosures for existing elevator shafts, and allowed a period of two years for constructing them. It would be impossible, in the face of these facts, to treat any provision of the older ordinance as still having an effect opposed to this allowance of time in the newer ordinance, or to require existing elevator shafts to be enclosed short of the time now allowed. *Maloy v. Scott*, 83 Md. 375, 376; *Munroe v. Wells*, 83 Md. 505, 510; *Wade v. St. Mary's Ind. School*, 43 Md. 178. The ordinance of 1922 controls exclusively in that respect.

The accident to the appellant occurred, according to the declaration, on June 19th, 1923. Part 1, section 4, rules 2a and 2h, of the ordinance of 1922, require enclosure of freight elevator shafts, or, in the alternative, hatch covers for them. There is a special section (26), which specifies the times when the various provisions become effective, and rules 2a and 2h of section 4 of part 1 refer to subdivision 5 of rule 26, which declares that the particular rule so referred to shall take effect and become operative as to "new installations when ordinance becomes effective and existing installations within two years thereafter." The declaration alleges that these premises had been leased to Hilbert in 1919, and the case has been argued by counsel for both sides on the assumption that the elevator here was an "existing installation." The declaration does not, at least, allege that it was a new installation, and, construing the allegations against the pleader (*Maenner v. Carroll*, 46 Md. 215), we must act upon the assumption that it was not. The effect of these provisions cited so far, taking them together, is, clearly enough, that the defendants' existing elevator installation was required to be enclosed as described within two years after June 16th, 1922, and that the failure to have it enclosed before June 16th, 1924, or at the time of the accident, was not a violation of their duty under the ordinance.

The appellant, however, cites other provisions as opposed

to this result.   Part 7, section 25, rule 1, gives the inspector of buildings supervision of all elevators and their operations, and authorizes him to carry out the provisions of the rules, and to make periodic inspections; and rule 6 of the same section directs him to stop the use of elevators and compel repairs to be made to render them safe, when he deems it necessary.   That rule is designated as one to become effective as to "all installations ninety days after ordinance becomes effective."   And the declaration alleges that, on November 9th, 1922, and on March 7th, 1923, both dates more than ninety days after the ordinance became effective, the inspector of buildings warned the defendants that the elevator shaft or hoistway was not protected as required by the ordinances, and that it should be enclosed.   By the terms of rule 6 of section 25, part 7, the inspector is directed to take action whenever he shall deem it necessary for the safety of the public, "by reason of the physical or mechanical condition of any apparatus connected with any elevator" etc.; and he is to stop the use of it for "alterations and repairs."   The language seems to describe rather the operating apparatus, the condition of which may change in a short time.   But whatever the scope of the section, it cannot, in our opinion, be construed as in conflict with the provision specifically applying to elevator enclosures, and overriding it, so as to empower the inspector to shorten the time allowance of two years expressly given by it.   We conclude, therefore, that notwithstanding any warnings by the inspector, as alleged, the defendants could not be said to have violated the ordinance in not having their shaft enclosed at the time of the accident.

*Judgment affirmed, with costs to the appellees.*