## FRANCIS BRINKMEYER *v.* UNITED IRON & METAL COMPANY, Inc.
### [No. 65, October Term, 1934.]

150

*Decided January 25th, 1935.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, and SLOAN, JJ.

*George W. Lindsay,* with whom were *Sauerwein & Lindsay* on the brief, for the appellant.

*Hilary W. Gans,* with whom were *Samuel S. Smalkin* and *Joseph T. Brennan* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The first count of the amended declaration in this case alleges that on May 28th, 1933, the plaintiff's eleven year old son was attending a baseball game, "which was being played on, or immediately adjacent to, premises owned by the defendant"; that "the public was invited to the game, and plaintiff's son was lawfully on the premises, and a voluntary subscription was collected from the attending public for the benefit of the contending clubs"; that "the defendant had piled in close proximity to the baseball field a number of iron pipes, boilers, stacks, tubes and other large iron objects"; that "there was no fence between the baseball field and the pile of iron objects, and for a long period of time the public attending such ball games had been accustomed and permitted to stand and sit on such iron objects in order to obtain

a view of the games, and such practice was known to and permitted by the defendant, its agents, servants, and employees, and there were no signs warning of danger or prohibiting such practices"; that on the day mentioned, "while the plaintiff's son was sitting on a stack or tank observing the baseball game, some one or more of the large pipes, stacks or boilers or other large iron objects, shifted their position in the said pile and rolled down upon and against the plaintiff's son, severely and permanently injuring him"; and that his injuries "were caused entirely by the negligence of the defendant, its agents, servants and employees, in piling said iron objects or in permitting the same to be piled in such a careless and negligent manner or to remain in such condition as to become dangerous to the public," and without any fault or negligence on the part of the plaintiff or his son thereunto contributing.

In the two other counts there are additional allegations as follows: "That on or about the 25th day of May, 1933, the defendant, its agents, servants, and employees, placed on the aforesaid pile one or more pipes, stacks, boilers, or other large objects, in an insecure position, thereby creating a new and undisclosed source of danger to any persons who should continue to be upon said pile as they had heretofore been permitted as aforesaid, that notwithstanding the dangerous condition of the said premises no sign was erected or warning given to the public and the general appearance of the pile was substantially the same as it had been theretofore, and the dangerous condition was not apparent to spectators attending the ball game the following Sunday; that on Sunday, May 28th, as aforesaid, a number of spectators at the baseball game there being played, proceeded to sit and stand upon the iron objects in said pile as they had heretofore been accustomed and permitted; that while plaintiff's said son was sitting on a stack or tank observing the baseball game, some one or more of the pipes, stacks, boilers, or other large objects, which had been placed on said pile, on or about the 28th day of

May, 1933, shifted their position on the said pile and rolled down upon and against the plaintiff's said son, severely and permanently injuring him"; and "that the injuries to the plaintiff's son were caused entirely by the negligence of the defendant, its agents, servants and employees, in piling said iron objects * * * and in creating a new and undisclosed source of danger without warning the public of the change. * * * "

To the amended declaration as a whole, and to each of its counts, the defendant demurred. The action of the trial court in sustaining the demurrer was in accord with the principle of law recently stated and applied in the case of *State, use of Lorenz, v. Machen,* 164 Md. 579, 165 A. 695. In that case, as in this, the injuries sued for were received by a boy who was permissively using the property alleged to be dangerous. The opinion, by Chief Judge Bond, said (pages 582, 583 of 164 Md., 165 A. 695, 696): "In several cases this court has had to consider claims of persons on property of others by license or permission, as distinguished from invitation or inducement. *Maenner v. Carroll,* 46 Md. 193; *Balto. & O. R. Co. v. State, use of Allison,* 62 Md. 479; *Benson v. Baltimore Traction Co., supra* [77 Md. 535, 26 A. 973]; *Kann v. Meyer,* 88 Md. 541, 41 A. 1065; *Baltimore v. De Palma,* 137 Md. 179, 112 A. 277. And the decisions in those cases have declared the familiar principle that permission or license gives leave only to take the property as the visitors find it, and that the owner or occupant undertakes no duty to those visitors who come for their own pleasure or convenience, and not at his invitation or upon inducement, express or implied, from a common advantage, except that, being aware of their presence, he must not injure them willfully or entrap them. 'A licensee must take the property as he finds it, and is entitled only not to be led into danger by "something like fraud." ' *Pollock, Torts* (11th Ed.) 544. 'He who is receiving the gratuitous favors of another has no such relation to him, it is said, as to create a duty to make safe, or better than it happens to be, the place where

the hospitality is tendered. The licensee must take the premises as he finds them. At most, he can claim only that the licensor shall abstain from entrapping him to his harm; shall not create new and undisclosed sources of danger without warning him of the change in situation.' *Burdick, Law of Torts* (4th Ed.) 548. And whatever differences there may be between the legal positions of trespassers and persons present by permission, to this extent they are the same; the rule stated applies to both. See *Benson v. Traction Co.,* 77 Md. at page 542, 26 A. 973. The trap, or 'something like fraud,' which is mentioned as a ground of liability to licensees, is commonly illustrated by the case of *Corby v. Hill,* 4 C. B. N. S 556, explained at length in *Maenner v. Carroll, supra.* There, a pile of slates was placed without warning in a roadway used by visitors so as to catch them by surprise; and it caused an accident. Judge Alvey distinguished the case of *Maenner v. Carroll* by the fact that the work during which the injury in the latter case was caused had been going on for six months, and therefore there had been no lack of warning. See *Beck v. Carter,* 68 N. Y. 283; *Davis v. Railway Co.,* 58 Wis. 646, 17 N. W. 406; 3 *Shearman & Redfield, Negligence* (6th Ed.) sec. 705; 1 *Beven, Negligence,* 563; *Lowery v. Walker,* [1911] A. C. 370."

It has been argued that the second and third counts of the declaration state a case within the purview of a qualification recognized in the opinion in *State, use of Lorenz, v. Machen,* because those counts allege that the injury to the plaintiff's son resulted from the negligence of the defendant in creating a new and undisclosed danger on the premises to which he and others customarily and permissively resorted, and in failing to give any warning of the peril thereby occasioned. The principle discussed in that case is expressed in *A. L. Inst. Restatement, Torts,* sec. 342, as follows:

"A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

"(a) Knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

"(b) Invites or permits them to enter or remain upon the land, without exercising reasonable care

"(i) To make the condition reasonably safe, or

"(ii) to warn them of the condition and the risk involved therein."

According to the allegations of the second and third counts, the creation of a new and undisclosed danger consisted in the insecure placing of "one or more pipes, stacks, boilers or other large objects" on the pile of similar iron products on which the public had been allowed to sit or stand while observing games on the adjacent baseball field. But it is not alleged that the defendant knew the condition of the pile to be such as to involve an unreasonable risk to the licensees, and had reason to believe that they would not discover its condition in that respect or realize the risk of continuing to use it for the permitted purpose. Those requisites of actionable liability on the part of the defendant to the licensees were not satisfied by the allegation that the additional objects were negligently and insecurely placed on the pre-existing pile. A charge of negligence does not necessarily impute knowledge that it actually resulted in the creation of a particular hazard. If, however, the averments of the second and third counts should be regarded as including an imputation of such knowledge, they do not allege a realization by the defendant that the insecure position of the superimposed iron objects involved an unreasonable risk which the licensees would not perceive. It was not the defendant's duty to the licensees to maintain without change the pile of iron products on which the plaintiff's son was injured. In the ordinary course of the business indicated by the defendant's corporate name, the removal and replacement of such products would have to be anticipated by those who were in the habit of utilizing the alleged license. As the units

composing the pile were tubular in form, the licensees could not reasonably depend upon its being always in a state of perfect stability. The increase of its height by the additions referred to would naturally tend to make it less secure as an elevation from which the baseball games could be witnessed. There was an inherent possibility of danger in climbing upon such a pile of metal forms as the declaration described. In view of that possibility, it could be reasonably supposed by the defendant that those who used the pile as a post of observation would take precautions to ascertain whether it was sufficiently stable to be safe for such use. There is no allegation that the unsafe condition which resulted in the accident could not have been discovered by a licensee exercising due care. The defendant's limited liability to those using its property by gratuitous permission did not require an assumption that they would not themselves observe a proper degree of care for their safety.

In our opinion, therefore, the declaration does not aver, in any of its counts, certain essential conditions for the application of the rule of qualified liability approved in *A. L. Inst. Restatement, Torts,* sec. 342, and in *State, use of Lorenz, v. Machen, supra.*

The cases of *Brinilson v. Chicago & N. W. R. Co.,* 144 Wis. 614, 129 N. W. 664, and *Snare & Triest Co. v. Friedman* (C. C. A.) 169 Fed. 1, cited by the appellant, were materially different in their facts from the case here alleged.

*Judgment affirmed, with costs.*