STEVENS, ᴇᴛ ᴀʟ. *v.* DOVRE, ᴇᴛ ᴀʟ.

[No. 612, September Term, 1966.]

*Decided November 8, 1967.*

16

[redacted]

The cause was argued before HAMMOND, C. J., and HOR-NEY, MARBURY, BARNES and FINAN, JJ.

*Samuel D. Hill,* with whom were *George W. White, Jr.,* and *Buckmaster, White, Mindel & Clarke* on the brief, for appellants.

*Eugene A. Alexander, III,* with whom were *Nevin E. Leese* and *Rome & Rome* on the brief, for appellees.

MARBURY, J., delivered the opinion of the Court.

This case comes to us from the Circuit Court for Baltimore County where the trial judge at the close of the plaintiffs' case granted the defendant-appellees, Eric H. Dovre and Barbara F. Dovre, a directed verdict on the ground that the evidence showed that they had not been primarily negligent. The facts leading up to the institution of the suit are as follows. On November 21, 1964, the plaintiff-appellants, Marian E. Stevens and Leland J. Stevens, and the appellees, who were members of the same church "couples club," had arranged to meet at a bowling alley and proceed to the appellees' home where the couples club had arranged a party at which Mrs. Stevens was to be a co-hostess with Mrs. Dovre. Mrs. Stevens arrived at the Dovre home at about 9:00 p.m., or shortly thereafter, and walked across the lawn and up the steps to the front door. At this time Mrs. Stevens was carrying in her hands a tray of brownies and noticed nothing unusual while mounting the steps and entering the house. Shortly after 11:00 p.m. when the party had ended and the other guests had departed, Mrs. Stevens prepared to leave and her husband and Mr. Dovre took the brownie pans and a coffee pot to be placed in the Stevens' car, while Mrs. Stevens started after them unassisted.

Mrs. Stevens, who was sixty-four years old, suffered from poor eyesight as a result of a cataract operation that she under-

went some sixteen years prior thereto and a detached retina sustained seven or eight years before the accident. To correct this condition she wore thick-lensed bifocal eyeglasses. She had known Mrs. Dovre for a period of about a year although she had never previously visited the Dovre home, but on occasion had remarked to Mrs. Dovre that she did not see very well.

When leaving the Dovres' home it was necessary to descend two brick steps. These steps were set on a concrete slab which was about four and one-half inches higher than the concrete walkway leading from the front entrance of the house to the driveway. This walkway was not as wide as the concrete slab which extended outward from each side of the walkway onto the lawn.

When Mrs. Stevens entered the house she walked across the lawn and stepped onto the concrete slab from the grass. When she left the house on her way to the car she attempted to walk from the slab onto the walkway where she fell.

Appellants urge that the judge below erred in granting a directed verdict under the circumstances presented in this case. They rely on Mrs. Stevens' poor sight, of which Mrs. Dovre knew, the location of the concrete slab and its appearance, as being factors which, in combination, go to show that negligence on the part of the Dovres could be found or inferred by the minds of reasonable men constituting a jury.

On the basis of the record before us we do not agree. While Mrs. Stevens' sight was concededly impaired, when asked about her vision with glasses which she was wearing at the time, she answered that her vision was "pretty fair." She had no trouble negotiating the steps when entering the house and required no assistance in doing so. Her husband apparently felt that there was no need to assist or guide her down the steps and, in fact, he went on ahead with Mr. Dovre to the car for the purpose of placing the cooking utensils therein.

Although the appellants claim that the concrete slab from which Mrs. Stevens was stepping when she fell was unusual both in its appearance and location, their own photographs, admitted in evidence, showed that the house next door to the Dovres' had a slab at the base of the front steps that was identical. The photographs of the scene of the accident showed no

18

conditions that rendered the slab inherently dangerous or that would put a property owner on notice that a dangerous condition existed. On the contrary, the structure of the entire area of the front entrance to the house seemed to be in conformity with sound principles of construction and design and involved no peculiarity that could constitute a hidden danger. The evidence showed that at the time of the accident the interior of the house was fully illuminated, and that the light over the front door was lighted. Mr. and Mrs. Stevens, in their testimony, indicated that an ornamental light located near the intersection of the walkway and the driveway to a garage was lighted, although neither of them was positive about this.

The duty of a home owner to social guests was first decided by this Court in the recent case of *Paquin v. McGinnis*, 246 Md. 569, 229 A. 2d 86, where we stated the conditions imposing liability on a host as follows:

> "* * * (1) the host knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such guests, and should expect that they will not discover or realize the danger, and (2) the host fails to exercise reasonable care to make the condition safe, or to warn the guests of the condition and the risk involved, and (3) the guests do not know or have reason to know of the condition and the risk involved."

We further said that "* * * the guest is expected to take the premises as the host uses them, and he may not expect that they will be prepared for his reception or that precautions will be taken for his safety in any manner in which the host did not prepare or take precautions for his own safety or the safety of the members of his family." (Citing authorities.)

We think that for the purpose of determining the duty owed to a social guest that he stands in the position of a licensee. While in *Paquin* we did not specifically state that a social guest was a licensee the standards that were pronounced are those that would be applicable to licensees under the established case law of this state. See cases collected in 16 M.L.E., *Negligence*, Section 35. Professor Prosser, in Section 60 of his *Law of Torts*,

(3d ed.) says: "Among the more common classes of persons who enter with nothing more than consent are * * * those who enter for social visits * * *" (citing cases in note 69).

The case of *Mann v. Pulliam, et al.,* 344 Mo. 543, 127 S. W. 2d 426 (1939), annotated in 25 A.L.R. 2d 598, 610, is analogous to the case before us. There a social guest left the home of her host after dark. There was a porch light and a light diagonally across the street which were lighted. There were five painted wooden steps and a sixth step of concrete the same color as the walkway that led from the steps to the street. The plaintiff was injured when she fell while stepping off the concrete step onto the walk of the same material in the belief that she was already on the same level as the walk. In its opinion, the Supreme Court of Missouri said:

> "The sole issue on the question of liability is whether the respondents can be adjudged guilty of negligence in maintaining the steps and walk as described in the evidence, that is, having the five wooden steps painted gray and the lower step and walk of concrete material a natural color, or unpainted, leaving the lower step and walk a different color than that of the five upper steps.
>
> "We are of the opinion that this state of facts did not prove actionable negligence."

We conclude that on the evidence before it at the close of the appellants' case that the trial court did not err in granting appellees' motion for a directed verdict.

*Judgment affirmed, costs to be paid by appellants.*