# GARY SHERMAN *v.* SUBURBAN TRUST COMPANY

[No. 43, September Term, 1977.]

*Decided April 3, 1978.*

The cause was argued before MURPHY, C. J., and SMITH, LEVINE, ELDRIDGE and ORTH, JJ., and reargued before MURPHY, C. J., and SMITH, LEVINE, ELDRIDGE and ORTH, JJ., and JOHN P. MOORE, Associate Judge of the Court of Special Appeals and ANSELM SODARO, Chief Judge of the Eighth Judicial Circuit, specially assigned.

Argued and reargued by *Karl G. Feissner,* with whom were *Feissner, Garrity, Levan & Schimel* on the brief, for appellant.

Argued and reargued by *Francis J. Ford* for appellee.

MURPHY, C. J., delivered the opinion of the Court. LEVINE and ELDRIDGE, JJ., dissent and LEVINE, J., filed a dissenting opinion in which ELDRIDGE, J., joins at page 250 *infra.*

We granted certiorari in this premises liability case prior to decision by the Court of Special Appeals to consider the liability of a property owner to a police officer injured on a nonpublic portion of the owner's premises while in the course of his official police duties.

Gary Sherman, a plainclothes police officer was on routine daytime patrol when he received a radio call that an attempt was being made to negotiate a forged check at the Suburban Trust Company (the bank) in Takoma Park, Maryland. When Sherman arrived at the bank, he observed that two persons were being detained by uniformed police officers in front of the drive-in teller's window. As senior officer present at the scene, Sherman went to the door of the teller's cage, and after

identifying himself, the teller, Mary Walden, permitted him and another officer to enter. The teller's cage was small, approximately 6 by 8 feet; it was not connected to the main bank building and was not open to the public. Sherman questioned the teller about the crime for approximately 3 to 5 minutes. During this time Miss Walden had her back to the drive-in window and Sherman stood facing her; in this position, he was able to speak with the teller and simultaneously watch the two detained suspects standing outside and in front of the drive-in window. Miss Walden accidentally dropped the forged check to the floor while she was speaking with Sherman. He stepped backwards about 2 or 3 feet and squatted down to retrieve the check. As he did so, he struck his left buttocks and back on the metal scoop arm of a coin changing machine which was positioned on a high stool to his immediate left; the scoop arm extended outward beyond the platform of the stool. Sherman had not observed the coin changing machine prior to striking it. Because of his preoccupation with questioning the teller, and at the same time keeping his eyes on the detained suspects, Sherman had not looked either to his right or left during the entire time he was inside the teller's cage.

Sherman sued the bank in the Circuit Court for Prince George's County; he claimed that in the course of investigating the crime in the teller's cage, "he was caused to bend over to secure evidence and . . . was struck in the back by a coin machine which the Defendant knew had been placed in a precarious position on a chair" out of his view. Sherman alleged that although the bank was aware of the placement of the coin machine, it failed "to give adequate warning of its placement and further placed it in a negligent position where it could cause injury to individuals such as the Plaintiff."

In submitting the case to the jury, the court instructed it that a police officer "who comes upon the premises of another for the investigation of a crime arrives generally under conditions of an emergency nature, and frequently at unexpected times and under such conditions that the owner or occupants of the property owes him no duty to keep the

premises prepared and safe for him." The court further instructed the jury:

"It is sometimes said that a police officer takes the property as he finds it, that is, an owner of property isn't liable to a police officer if there exists usual or ordinary and customary hazards. On the other hand, the owner of property must not subject a police officer to unusual or extraordinary danger, and if such exists and if it is not reasonable to perceive the police officer will discover such, then the defendant owner may be liable to the plaintiff for having created or maintained such an unusual or extraordinary hazard.

"By unusual or extraordinary hazard we mean something that is rare, uncommon and not found in common experience.

"In summary then we advise you that if you find that the placement of the coin changer on the chair constituted an unusual or extraordinary hazard, and that it was not such as could have been discovered by the plaintiff, then you may find that such was negligence. On the other hand, if you find the placement of the coin changer presented no hazard or danger, or if a danger it was of a usual and ordinary type as might be found in a business office or premises of a similar nature, then your verdict should be for the defendant."

Sherman excepted to the court's jury instructions; he claimed that as a police officer he was either an invitee or in a class sui generis, and was not a mere licensee, as the court in effect instructed the jury. Sherman sought an instruction that the bank had an affirmative duty to exercise ordinary care to keep the premises reasonably safe for him and to refrain from negligence. The court refused the requested instruction, the jury returned a verdict for the bank, and this appeal followed.

Under existing Maryland law, the liability of a property owner to an individual injured on his property is dependent

on the standard of care owed to the individual and that, in turn, is contingent upon a determination of the individual's status while on the property, *i.e.*, whether he is an invitee, licensee, or trespasser. *Macke Laundry Serv. Co. v. Weber,* 267 Md. 426, 298 A. 2d 27 (1972); *Bramble v. Thompson,* 264 Md. 518, 287 A. 2d 265 (1972). An invitee is in general a person invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business; the owner must use reasonable and ordinary care to keep his premises safe for the invitee and to protect him from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover. *Gary v. Sentinel Auto Parks Co.,* 265 Md. 61, 288 A. 2d 121 (1972); *Lloyd v. Bowles,* 260 Md. 568, 273 A. 2d 193 (1971); *Gast, Inc. v. Kitchner,* 247 Md. 677, 234 A. 2d 127 (1967). A licensee is generally defined as one who enters the property with the knowledge and consent of the owner but for his own purposes or interest; the owner owes no duty to a licensee under the traditional common law view except to abstain from wilful or wanton misconduct or entrapment. *Hicks v. Hitaffer,* 256 Md. 659, 261 A. 2d 769 (1970); *Levine v. Miller,* 218 Md. 74, 145 A. 2d 418 (1958); *Carroll v. Spencer,* 204 Md. 387, 104 A. 2d 628 (1954). It has been said that a licensee "must take the property as he finds it, the owner or occupant undertaking no duty .... [to him] except that, if he becomes aware of the licensee's presence, the licensor must not injure him wilfully or entrap him." *Peregoy v. Western Md. R. R. Co.,* 202 Md. 203, 207, 95 A. 2d 867 (1953). The limited duty owed to a licensee requires, however, that the landowner not create new and undisclosed sources of danger without warning the licensee. *Hensley v. Henkels & McCoy, Inc.,* 258 Md. 397, 265 A. 2d 897 (1970); *Brinkmeyer v. Iron & Metal Co.,* 168 Md. 149, 177 A. 171 (1935); *State v. Machen,* 164 Md. 579, 165 A. 695 (1933).

Firemen and policemen traditionally have been held in most jurisdictions to be mere licensees. W. Prosser, *Handbook of the Law of Torts* § 61 (4th ed. 1971); 2 F. Harper and F. James, *The Law of Torts* § 27.14 (1956); 1 J. Dooley, *Modern Tort Law* § 19.07 (1977); Annot., 86 A.L.R.2d 1205 (1962). One

explanation given by each of the cited authorities for classifying firemen and policemen as licensees upon premises, rather than invitees, is because they are likely to enter at unforeseeable times, upon unusual parts of the premises, and under circumstances of emergency, where care in preparing for the visit cannot be expected and a duty to make the premises reasonably safe for them at all times would constitute a severe burden.

Our predecessors adhered to this traditional view in *Steinwedel v. Hilbert*, 149 Md. 121, 123-24, 131 A. 44 (1925), holding that "a fireman entering premises to put out fire is a licensee only, and not an invitee, and that the owner or occupant of the premises is not under any duty of care to keep his premises prepared and safe for a fireman." Forty years later, in *Aravanis v. Eisenberg*, 237 Md. 242, 206 A. 2d 148 (1965), the Court reaffirmed its basic holding in *Steinwedel* that a fireman is a licensee and not an invitee. While again expressing the view that owners and occupants of property owe licensees only the duty of abstaining from wilful or wanton misconduct or entrapment, the Court stated that under Maryland law this encompassed a duty to warn of any hidden dangers, where there was knowledge of such danger and an opportunity to give warning. It also held that a fireman's status as a licensee could in some circumstances undergo a change, after the initial period of anticipated occupational risk in fighting a fire, to that of an invitee, thus entitling him to the greater care due an invitee.

Sherman contends on appeal that, if originally he was a licensee when entering upon the bank's premises, the collision with the scoop arm of the coin changing machine occurred after the initial period of his anticipated occupational risk had passed, namely, after he came to the bank to apprehend the suspects; and he thereafter became an invitee under the rationale of *Aravanis* and as such entitled to an instruction that the bank owed an affirmative duty to him to exercise ordinary care to keep the premises in a reasonably safe condition.

In *Aravanis*, the plaintiff fireman responded to a fire in the defendant's home. The fire had begun in the basement when

the defendant knocked a tool off his work bench which fell into a jug containing acetone; the jug burst and the acetone came into contact with the flame of the pilot light of a nearby hot water heater and ignited. The plaintiff was in the basement fighting the fire when there was a sudden flash and he was severely burned. He claimed that he was injured, not because of the fire itself, but because of the defendant's failure to keep the acetone in a proper container. He sought a jury instruction that in the circumstances he was entitled to the higher degree of care accorded to an invitee to the premises.

It was against this background that the Court in *Aravanis* reaffirmed the basic Maryland law that a fireman is a licensee, ordinarily entitled only to that duty of care owed to a licensee by a property owner, which included a duty on the owner's part to warn of any hidden dangers if he has knowledge thereof and an opportunity to give warning. The Court said that so long as a fireman is injured by the flames or gases of the fire, apart from unusual factors operative after the fire began, and apart from a failure to warn of hidden dangers, he cannot recover from the owner since fighting the fire, however caused, is his occupation. The Court said:

> "It is when the fireman sustains injuries after the initial period of his anticipated occupational risk, or from perils not reasonably foreseeable as part of that risk, that the justice of continuing to regard him as a licensee only is questioned." 237 Md. at 252.

The Court then noted that there may be a change of status, geographical or chronological, of one who starts as a licensee to that of an invitee. It said that there was evidence that the defendant's failure to keep the acetone in a proper container constituted negligence which triggered an active dangerous force which operated after the fire started. The Court identified the precise issue before it, *i.e.,* "whether the initial occupational hazard of the fire being no longer involved, the fireman retains his status as a licensee only, or whether he is entitled to the greater care due an invitee." The determination of that question, the Court said, depended upon

whether the owner owed the fireman a higher duty because his negligence affected him, chronologically, after the expected peril of the fire had been met. The Court, however, found it unnecessary to decide this issue; it said that even if the fireman's contentions were correct, the jury instructions actually given were as favorable to him as if he were deemed an invitee at the time of his injury.

The jury had been instructed that when the plaintiff entered the premises to fight the fire, he was a licensee and took the property as he found it, subject to the usual and ordinary hazards to which firemen are ordinarily exposed. It was also instructed that if unusual or extraordinary dangers existed, of which the owner was aware, but of which the fireman was not, the owner must exercise reasonable care not to subject the fireman to such danger and to make him aware of it where the fireman could not reasonably be expected to discover it in the discharge of his duties.

The jury was then instructed that if it found that because of the defendant's negligence in storing the acetone there existed a danger greater than that which is normally found in a private dwelling house, and this was known to the defendant, or reasonably foreseeable by him, but not known to the fireman, the defendant then had a duty to warn the fireman of the unusual danger and not permit him to be exposed to its consequences. The jury was further instructed in this regard that it must consider whether the danger, if any, which existed was not only an unusual and unexpected one but also whether the defendant knew or in the exercise of reasonable care should have known of its existence.

The Court said that these instructions, while not in express terms referring to the fireman as an invitee, did in fact outline the duty which a property owner owes to an invitee. It concluded that even though the trial judge refused the fireman's requested instruction that he was an invitee, rather than a licensee, he in effect adopted the fireman's "theory of his status in the only phase of the case in which, in our view, the appellant could properly have been regarded as an invitee." 237 Md. at 257.

Plainly, *Aravanis* is not authority for the proposition that

a fireman entering upon property to fight a fire is per se an invitee; indeed, Dean Prosser has observed that *Aravanis* "emphatically rejected" the Illinois view, espoused in *Dini v. Naiditch*, 20 Ill. 2d 406, 170 N.E.2d 881 (1960), that firemen (and most likely policemen) are invitees in all respects when entering upon another's property in the performance of their duties. Prosser, § 61, footnote 94 at 398. Nor can Sherman equate his status in the bank's premises under the facts of this case to that of the fireman in *Aravanis*. Sherman was injured during, and not after, the initial period of his anticipated occupational risk, and from a hazard reasonably foreseeable as a part of that risk. He was not injured by reason of any active dangerous force unleashed on the premises after he entered upon the routine performance of his duties, as in *Aravanis*. It is readily apparent from the evidence in this case that Sherman did not, within the contemplation of *Aravanis,* undergo a change of status, geographical or chronological, from licensee to invitee at any time after he arrived at the crime scene. Sherman was not, therefore, entitled to invitee status or to the substance of the invitee instruction in *Aravanis*. The instructions actually given to the jury, in the circumstances, were in accordance with the Maryland law.[1]

Sherman next argues that Maryland should abolish its long-standing common law classifications of invitees, licensees and trespassers and instead hold owners and occupiers of property to a general negligence standard of reasonable care due the entrant under the circumstances of the particular case. That a trend now exists toward total or partial abandonment of the common law status classifications is manifest; indeed, it has commanded much attention from the commentators and the merits of abolishing the traditional classifications have been subject to erudite and in-depth examination in numerous law review articles. *See, e.g.,*

---

1. The *Restatement (Second) of Torts* § 345 (1965) places one who enters the premises of another in the exercise of a privilege, for either a public or a private purpose, irrespective of the possessor's consent, in the status of a licensee, except that a public employee or officer "who enters the land in the performance of his public duty, and suffers harm because of a condition on a part of the land held open to the public" is classified for purposes of liability as an invitee.

Comment, *The Common Law Tort Liability of Owners and Occupiers of land: A Trap for the Unwary?,* 36 Md. L. Rev. 816 (1977). The trend had its initial impetus in 1968 in the case of *Rowland v. Christian,* 69 Cal.2d 108, 443 P. 2d 561, 70 Cal. Rptr. 97, when the Supreme Court of California rejected the common law status classifications, stating that they obscured rather than illuminated the proper considerations which should govern determination of the duty owed to an entrant upon property. The court observed that the preeminence of land over life in the 19th century was no longer accepted and that a realignment of values should be reflected in the landowner's legal duties. It said:

> "A man's life or limb does not become less worthy of protection by the law nor a loss less worthy of compensation under the law because he has come upon the land of another without permission or with permission but without a business purpose. Reasonable people do not ordinarily vary their conduct depending upon such matters, and to focus upon the status of the injured party as a trespasser, licensee, or invitee in order to determine the question whether the landowner has a duty of care, is contrary to our modern social mores and humanitarian values. . . ." 443 P. 2d at 568.

The court supplanted the common law bases of the land occupier's liability to entrants upon his property with a general negligence test of reasonable care under the circumstances determined by foreseeability. The precise test adopted by the court was:

> "whether in the management of [the occupant's] property he has acted as a reasonable man in view of the probability of injury to others, and, although the plaintiff's status as a trespasser, licensee, or invitee may in the light of the facts giving rise to such status have some bearing on the question of liability, the status is not determinative." 443 P. 2d at 568.

A number of jurisdictions have followed California's pioneering lead. *See Smith v. Arbaugh's Restaurant, Inc.,* 469

F. 2d 97 (D.C. Cir. 1972), *cert. denied,* 412 U.S. 939 (1973); *Webb v. City and Borough of Sitka,* 561 P. 2d 731 (Alaska 1977); *Mile High Fence Company v. Radovich,* 175 Colo. 537, 489 P. 2d 308 (1971); *Pickard v. City and County of Honolulu,* 51 Haw. 134, 452 P. 2d 445 (1969); *Cates v. Beauregard Electric Cooperative, Inc.,* 328 So. 2d 367 (La. 1976); *Ouellette v. Blanchard,* 116 N. H. 552, 364 A. 2d 631 (1976); *Basso v. Miller,* 40 N.Y.2d 233, 352 N.E.2d 868, 386 N.Y.S.2d 564 (1976); *Mariorenzi v. Joseph DiPonte, Inc.,* 114 R. I. 294, 333 A. 2d 127 (1975). *See also Kermarec v. Compagnie Generale Transatlantique,* 358 U. S. 625, 79 S. Ct. 406, 3 L.Ed.2d 550 (1959), declining to apply the common law status distinctions to maritime law; Annot., 32 A.L.R.3d 508 (1970); 1 J. Dooley, *Modern Tort Law* § 19.01 (1977); W. Prosser, *Handbook of the Law of Torts* § 62 (4th ed. 1971).

Some jurisdictions have abolished the classification of licensees and invitees in favor of a general negligence standard but have preserved the common law status of trespassers. *See, e.g., Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43 (1973); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639 (1972); *O'Leary v. Coenen,* 251 N.W.2d 746 (N.D. 1977); *Antoniewicz v. Reszcynski,* 70 Wis. 2d 836, 236 N.W.2d 1 (1975). *See also Wood v. Camp,* 284 So. 2d 691 (Fla. 1973).

Several jurisdictions which have expressly considered *Rowland* and its progeny have decided to retain the common law classifications. *See, e.g., Frazee v. St. Louis-San Francisco Railway Co.,* 219 Kan. 661, 549 P. 2d 561 (1976); *Astleford v. Milner Enterprises, Inc.,* 233 So. 2d 524 (Miss. 1970); *Caroff v. Liberty Lumber Co.,* 146 N.J. Super. 353, 369 A. 2d 983 (1977); *Behrns v. Burke,* S. D., 229 N.W.2d 86 (1975). The majority of jurisdictions, without having considered the modern trend of cases, have continued to adhere to the common law classifications as the essential determinant of the land occupier's liability. *See, e.g., Snyder v. I. Jay Realty Co.,* 30 N. J. 303, 153 A. 2d 1 (1959); *DiGildo v. Caponi,* 18 Ohio St. 2d 125, 247 N.E.2d 732 (1969). Maryland, as previously indicated, is presently aligned with the majority view. *Macke Laundry Serv. Co. v. Weber,* 267 Md.

426, 298 A. 2d 27 (1972); *Bramble v. Thompson,* 264 Md. 518, 287 A. 2d 265 (1972).

The Court of Special Appeals has taken note of the modern trend toward abolition of the rigid classifications of invitee, licensee, and trespasser. *See Woodward v. Newstein,* 37 Md. App. 285, 377 A. 2d 535 (1977). After briefly reviewing the authorities, that court declined to pass on the merits of the new trend of cases, stating that the question had not been preserved for appellate review and that, in any event, the matter was one more properly for consideration by this Court in a case where the issue is properly raised.

We do not think the question is properly before us in this case, and we reserve it for another day. In none of Sherman's numerous requests for jury instructions did he seek application of a general negligence standard or place reliance upon the principles of *Rowland* and its progeny. All of his requested instructions were designed to bring him within the status of an invitee or within a sui generis classification for firemen which would have afforded him the same care as that due an invitee. These requested instructions were based on Sherman's interpretation of the holding in *Aravanis* and his objections to the trial judge's instructions, as actually given, were likewise grounded in *Aravanis.*

Maryland Rule 554 e provides that on appeal a party assigning error in the instructions "shall be restricted to (1) the particular portion of the instructions given or the particular omission therefrom or the particular failure to instruct distinctly objected to before the jury retired and (2) the grounds of objection distinctly stated at the time, and no other errors or assignments of error in the instructions shall be considered by the appellate court." Rule 885 similarly provides that the Court "will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the circuit court; . . . ." In view of these provisions, and because Sherman's reliance upon the *Rowland* line of cases is plainly an appellate afterthought, we do not pass upon his final contention.

> *Judgment affirmed; appellant to pay costs.*

*Levine, J., dissenting:*

I respectfully dissent.

Claiming that the question was not properly preserved for appellate review under Maryland Rules 554 e and 885, the majority refuses to decide the primary issue for which certiorari was granted: whether Maryland should abandon the common law distinctions between invitees, licensees and trespassers for purposes of the law of premises liability. It is asserted that this Court is precluded from considering the question because of appellant's failure to request a jury instruction specifically predicating the tort liability of an owner or occupier of land upon principles of ordinary negligence, rather than upon the technical status of a plaintiff-entrant.

> "In none of Sherman's numerous requests for jury instructions did he seek application of a general negligence standard or place reliance upon the principles of *Rowland* and its progeny." 282 Md. at 249.

I disagree. In my view, the record clearly indicates that appellant did pray for a general negligence instruction, which not only ignored the common law status classifications, but implicitly assumed their abandonment.

Presumably the majority recognizes that by praying for a general negligence instruction, appellant would have succeeded in preserving the issue for our consideration. Yet this is precisely what appellant did when he proferred his Jury Instruction Number 8, which in its entirety read as follows:

> "The jury is instructed that the owner or occupier of the premises such as the Suburban Trust Company is in this case, is obliged by law *to affirmatively exercise ordinary care* to keep the premises in the condition *reasonably safe* for individuals such as Officer Sherman and *to refrain from negligence.* The responsibility with respect to the condition of the premises is not absolute. The owner is not an insurer. If there is a danger upon the

entry or upon the premises which the officer is invited to enter and if such danger arises from conditions not reasonably apparent to the senses and if the owner or occupier has actual knowledge of them or if they are *discoverable in the exercise of ordinary care,* it then becomes his duty and that of his agents to give reasonable warning of such danger to individuals such as Officer Sherman. On the other hand, the owner or occupier is not bound to discover defects which an [sic] reasonable inspection were not disclosed and he is entitled to assume that the officer will reasonably perseve [sic] those dangers which would be apparent to him upon reasonable and ordinary use of his own senses. On the other hand, the Officer has the right to assume that the premises he is inivited [sic] to enter are *reasonably safe* for the purposes for which he has entered." (emphasis added).

Save possibly for the use of the word "invited" in its apparently colloquial sense, the proposed instruction makes absolutely no reference to the common law categories. Had appellant sought to bring himself within the invitee classification, he undoubtedly would have employed explicit language to that effect. *See, e.g., Maryland State Bar Association Pattern Jury Instructions — Civil* 246 (1977). Rather, the requested instruction states in unmistakable terms that appellee was under a duty to "exercise ordinary care" in maintaining its premises and "to refrain from negligence." The conclusion is inescapable that this instruction sets forth a theory of liability based strictly on ordinary negligence concepts without regard to the technical status of the plaintiff.

What is more, the majority opinion itself appears to concede that appellant preserved the point, stating that "Sherman . . . sought an instruction that the bank had an affirmative duty to exercise *ordinary care* to keep the premises reasonably safe for him and *to refrain from negligence.*" 282 Md. at 241 (emphasis added).

Although no case authority was cited in support of the

prayer, appellant's Instruction Number 8 is an accurate description of what a landowner's duty of care would be under a system of premises liability in which the ancient status categories have been abandoned. *See, e.g., Ouellette v. Blanchard,* 116 N. H. 552, 364 A. 2d 631, 634 (1976). By requesting such an instruction, and by entering a timely exception to the trial court's final charge to the jury, appellant fully complied with the provisions of Maryland Rule 554 e, thereby properly preserving for our review the issue of whether the common law rules of premises liability should finally be abolished in Maryland.[1]

Retention of the archaic doctrine predicating the duty of a landowner solely upon the status of the injured party as a trespasser, licensee or invitee can no longer be justified in terms of either logic or social policy. Although it was once thought that the common law approach was necessary to protect a landowner's right to the free use and enjoyment of his property, *Neal v. Home Builders,* 232 Ind. 160, 111 N.E.2d 280, 292 (1953); Smith, *Liability of Landowners to Children Entering Without Permission,* 11 Harv. L. Rev. 349, 362 (1898), the emerging and more enlightened view, in my opinion, is that society's interest in the safety of its members outweighs its interest in the occupier's unrestricted use of his premises. Hughes, *Duties to Trespassers: A Comparative Survey and Revaluation,* 68 Yale L. J. 633, 689-90 (1959); *see Rowland v. Christian,* 69 Cal. 2d 108, 70 Cal. Rptr. 97, 443 P. 2d 561, 568, 32 A.L.R.2d 496 (1968); *Mounsey v. Ellard,* 363 Mass. 693, 297 N.E.2d 43, 51 (1973); *O'Leary v. Coenen,* 251 N.W.2d 746, 752 (N.D. 1977).

Strict application of the common law rules has frequently resulted in the inordinately severe treatment of plaintiff entrants. *See, e.g., Osterman v. Peters,* 260 Md. 313, 272 A. 2d 21 (1971) (upholding directed verdict in favor of defendant whose negligence in leaving swimming pool unattended led

---

1. After the jury had been instructed, appellant specifically noted his exception to the refusal of the court to grant Instruction Number 8. More importantly, the court acknowledged that appellant had met the requirements of Maryland Rule 554 e by making his prayers a part of the record, and indicated that it would therefore be unnecessary for counsel to do anything further to preserve the point.

to death of 4½ year old infant trespasser). The inequities of the traditional system are especially apparent in those cases where courts, focusing exclusively on status, rule against the injured party as a matter of law thereby depriving the plaintiff of a jury determination as to the reasonableness of the landowner's conduct in light of prevailing standards within the particular community. *Smith v. Arbaugh's Restaurant, Inc.,* 469 F. 2d 97, 103-104 (D.C. Cir. 1972), *cert. denied,* 412 U. S. 939 (1973); *Mile High Fence Company v. Radovich,* 175 Colo. 537, 489 P. 2d 308, 312 (1971); Note, 44 N.Y.U.L. Rev. 426, 430 (1969).

A growing dissatisfaction with the harsh and clumsy nature of the common law rules has prompted courts to engraft upon the doctrine a multitude of exceptions and modifications. Ironically, these efforts have by and large added to the complexity, confusion and inequity of the system, giving rise to what one court has termed, a "semantical quagmire." [2] *Mariorenzi v. Joseph DiPonte, Inc.,* 114 R. I. 294, 333 A. 2d 127, 133 (1975). *See also Kermarec v. Compagnie Generale,* 358 U. S. 625, 631, 79 S. Ct. 406, 3 L.Ed.2d 550 (1959); *Peterson v. Balach,* 294 Minn. 161, 199 N.W.2d 639, 644 (1972); *Scurti v. City of New York,* 40 N.Y.2d 433, 387 N.Y.S.2d 55, 354 N.E.2d 794, 797-98 (1976).

Finally, continued adherence to the ancient licensee-invitee-trespasser distinction is inconsistent with contemporary thinking about the function of tort law in our society. Resort to rules of status, as opposed to principles of negligence and fault, conflicts with the goal of distributing risks of personal injury over large segments of the population

---

2. Maryland case law is replete with examples of confusion engendered by use of the common law system of status classifications. A good illustration is Aravanis v. Eisenberg, 237 Md. 242, 206 A. 2d 148 (1965), noted in 25 Md. L. Rev. 348 (1965), upon which the majority relies so heavily in disposing of the case at hand. There the protection accorded firemen injured in the course of performing their duties was made to turn on the vague notion of whether the "occupational risk" of firefighting had been dissipated by a mere passage of time and a slight change in geography. Equally perplexing is the treatment of so-called social guests. *See* Telak v. Maszczenski, 248 Md. 476, 237 A. 2d 434 (1968); Stevens v. Dovre, 248 Md. 15, 234 A. 2d 596 (1967); Paquin v. McGinnis, 246 Md. 569, 229 A. 2d 86 (1967). For a discussion of the idiosyncrasies of Maryland law in this area, see Note, 36 Md. L. Rev. 816, 822-34 (1977).

and prevents efficient allocation of social resources. *Smith v. Arbaugh's Restaurant, Inc.,* 469 F. 2d at 101; *see* Ursin, *Strict Liability for Defective Business Premises — One Step Beyond* Rowland *and* Greenman, 22 U.C.L.A. L. Rev. 820 (1975). As Professors Harper and James wrote over twenty years ago: "[T]he traditional rule confers on an occupier of land a special privilege to be careless which is quite out of keeping with the development of accident law generally and is no more justifiable here than it would be in the case of any other useful enterprise or activity." 2 F. Harper & F. James, *The Law of Torts* § 27.3, at 1440 (1956).

For these reasons, I think it is time to abandon once and for all the common law status-oriented approach to premises liability and to adopt in its stead a standard grounded on well-settled principles of ordinary negligence. Thus a landowner, in using and maintaining his property, would be obligated to conduct himself in a reasonable and prudent manner so as not to create an unreasonable risk of harm to persons entering on the premises. The standard of care to be applied under such a rule would depend upon several factors, including the likelihood that the conduct in question will result in injury to others, the gravity of such harm, and the cost of preventing or mitigating the risk of injury. *Kermarec v. Compagnie Generale,* 358 U. S. at 632; *Webb v. City and Borough of Sitka,* 561 P. 2d 731, 733 (Alaska 1977); *Rowland v. Christian,* 443 P. 2d at 568; *Mile High Fence Company v. Radovich,* 489 P. 2d at 314; *Pickard v. City and County of Honolulu,* 51 Haw. 134, 452 P. 2d 445, 446 (1969); *Cates v. Beauregard Electric Cooperative, Inc.,* 328 So. 2d 367, 371 (La.), *cert. denied,* 429 U. S. 833 (1976); *Ouellette v. Blanchard,* 364 A. 2d at 634; *Basso v. Miller,* 40 N.Y.2d 233, 386 N.Y.S.2d 564, 352 N.E.2d 868, 872 (1976); *Mariorenzi v. Joseph DiPonte, Inc.,* 333 A. 2d at 133.

I would reverse the judgment of the circuit court and remand the case for a new trial. Judge Eldridge authorizes me to state that he joins this opinion.