Willie **STEPNEY**

v.

Jimmie L. **DILDY.**

Civ. No. JFM–88–1373.

United States District Court, D. Maryland.

Sept. 29, 1989.

**78**

Harry A. Baumohl, Finifter & Baumohl, P.A., Towson, Md., for plaintiff.

Richard E. Schimel, Budow & Noble, P.C., Bethesda, Md., for defendant.

### MEMORANDUM & ORDER

CATHERINE C. BLAKE, United States Magistrate.

On December 14, 1986, defendant Jimmie Dildy hosted a party at his home in Silver Spring, Maryland. Among those invited was Willie Stepney, the plaintiff. Mr. Stepney and the other guests arrived after dark at Mr. Dildy's home on a cold night wearing heavy winter clothing. Mr. Stepney and others proceeded up the driveway in front of Mr. Dildy's home and from there to the walkway up to the front entrance of the house. When Mr. Stepney left later that evening, walking down the same driveway, he was "caused to slip and fall violently to the ground due to unsafe, dangerous, and defective conditions of the aforesaid pavement and driveway, more particularly, ice which had accumulated upon the surface." (Complaint at par. 4). On May 12, 1988, Mr. Stepney sued Mr. Dildy for injuries suffered as a result of the fall, claiming that Mr. Dildy was negligent in failing to maintain a safe passageway without the presence of ice and failing to warn his "social invitees" as they left of the "dangerous and defective conditions existing on his premises." (*Id.* at par. 7).

On July 6, 1989, the case was transferred to the undersigned Magistrate by consent of the parties for final disposition pursuant

to 28 U.S.C. § 636(c). Now pending is the motion in limine of the defendant to exclude the proposed testimony of human factors expert Robert Sleight, Ph.D. Mr. Stepney filed an opposition, to which Mr. Dildy filed a response. For the reasons that follow, the motion will be granted.

■ Under Maryland law, a social guest takes the property as the owner and the members of the owner's family use them. A host will be liable for physical harm caused to guests by a condition on the premises:

> if, but only if, (1) the host knows or has reason to know of the condition and should realize that it involves an unreasonable risk of harm to such guests, and should expect that they will not discover or realize the danger, and (2) the host fails to exercise reasonable care to make the conditions safe, or to warn the guests of the condition and the risk involved, and (3) the guests do not know or have reason to know of the condition and the risk involved.

*Paquin v. McGinnis,* 246 Md. 569, 229 A.2d 86, 88 (1967) (host not liable to guest who slipped on scatter rug placed on waxed floor beside bed). *See also Stevens v. Dovre,* 248 Md. 15, 234 A.2d 596, 598–99 (1967) (host not liable to guest who was leaving house after dark and fell when stepping from concrete slab at bottom of steps onto concrete walkway).

Robert Sleight, Ph.D., a human factors expert, was retained by Mr. Stepney to examine Mr. Dildy's premises, consider the circumstances of the accident, and render an opinion as to causation.[1] Dr. Sleight's version of how Mr. Stepney fell is as follows: Mr. Stepney walked down the driveway, which began at a 10 degree decline, changed to a 12 degree decline, then became flat, and lastly ended with a 7 degree decline. (Tr. 55, Dr. Sleight's report at 3).[2] When Mr. Stepney reached the last portion of the driveway at the 7 degree decline, he slipped on a small, approximately six inch

square patch of ice. (Tr. 56, 58, 67). The plaintiff would have Dr. Sleight testify that there was precipitation in the area that evening, that the temperature was sufficiently cold to freeze any such precipitation, that the illumination on the driveway at that point was not sufficient for the plaintiff to see the ice, that the change in slope of the driveway from flat to a 7 degree decline may have "kinesthetically" led the plaintiff to believe that he was already at the street, that the slope of the driveway may have violated building construction (BOCA) standards, and that Mr. Dildy should have warned his guests as they departed.

■ The admissibility of expert testimony in a federal court exercising diversity jurisdiction is controlled by federal law. *Scott v. Sears, Roebuck and Co.,* 789 F.2d 1052, 1054 (4th Cir.1986); *Garwood v. International Paper Co.,* 666 F.2d 217, 223 (5th Cir.1982). Rule 702 of the Federal Rules of Evidence provides that expert testimony may be admitted if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." The Fourth Circuit has stated that: "Rule 702 makes inadmissible expert testimony as to a matter which obviously is within the common knowledge of jurors because such testimony, almost by definition, can be of no assistance." *Scott v. Sears, Roebuck, supra,* 789 F.2d at 1055.

■ While the admission of such testimony will usually be harmless error, it may become prejudicial error "when the evaluation of the commonplace by an expert witness might supplant a jury's independent exercise of common sense. This, however, does not seem to be an inquiry under Rule 702, but rather a necessary, independent inquiry under Rule 403 to exclude evidence which is prejudicial." (*Id.*) (citations omitted). Further, an expert's opinion on causation must be based on facts established by independent evidence properly intro-

---

1. Dr. Sleight submitted a report, dated June 24, 1989, detailing his findings and opinions. (Defendant's Motion in Limine, Attachment) (hereinafter "Dr. Sleight's report").

2. "Tr." references are to the deposition transcript of Dr. Sleight's testimony on July 12, 1989.

duced. *Newman v. Hy–Way Heat Systems, Inc.*, 789 F.2d 269, 270 (4th Cir.1986); *Cunningham v. Rendezvous, Inc.*, 699 F.2d 676, 678 (4th Cir.1983).

█ Defense counsel does not claim, nor does the court find, that Dr. Sleight lacks the qualifications to testify as an expert witness. As to Dr. Sleight's opinions, however, some are based on assumed facts not supported by the evidence, some relate to matters obviously within the common knowledge of the jury, and others are irrelevant to the plaintiff's contention as to how the accident occurred.

Dr. Sleight's opinion that the illumination of the driveway was inadequate is based on an assumption that the only light source, other than the sky, was the street lamps down the block, which were obstructed by some bushes on the driveway. (Tr. 48–50, 71, Dr. Sleight's report at 6–7). Dr. Sleight admitted that he did not know whether the porch light was on, whether the garage light was on, whether there was a light across the street, or what phase the moon was in. (Tr. 51–53). He had not made any measurements of the degree of illumination that would have been available that evening. (Tr. 70). The witnesses deposed in the case testified that Mr. Dildy's porch light was on, that the driveway was sufficiently illuminated to permit visibility, and that there was bright light from the moon. (*See* Defendant's Motion in Limine at 4).

On the question of precipitation, Dr. Sleight testified that he assumed there had been precipitation prior to the incident based on a Rockville weather service report indicating that the temperature that date was below freezing and that there was a trace of precipitation in the form of snow flurries. (Tr. 30–31, Dr. Sleight's report at 5). The weather report did not indicate when the precipitation began or ended or whether there was any precipitation in the area where Mr. Dildy lived. (Tr. 31–32). Dr. Sleight later conceded that he did not actually know where the ice came from. None of the possible sources of moisture were such that Mr. Dildy would have any better knowledge of them than would Mr. Stepney. (Tr. 34–35). Nor is the testimony

of a human factors expert required to advise the jury that moisture will freeze at 32 degrees or colder. (Tr. 35–36).

Dr. Sleight also suggested that the driveway was unsafe because of the degree of incline, stating that the current BOCA code permitted no more than "one unit in a run of eight units." (Tr. 57). He admitted that he did not know when Mr. Dildy's house was constructed or what the BOCA code required at the time of construction, and also admitted that if the house met the code at the time it was built, no subsequent alteration would be required. (Tr. 42, 66). Moreover, Dr. Sleight admitted that Mr. Stepney fell on the area of the driveway which sloped at 7 degrees, which was within the present BOCA code and acceptable for a ramp to be used by typical pedestrians. (Tr. 54, 57, Dr. Sleight's Report at 4). Finally, Dr. Sleight opined that because the driveway sloped, then leveled off, and then sloped again, the plaintiff "had good reason to think that he had reached the roadway surface when indeed he was some six feet away from the roadway surface." (Tr. 75). Dr. Sleight had not conducted, however, nor was he aware of any empirical studies indicating that this phenomena created a safety hazard for pedestrians. (Tr. 76). Further, the plaintiff claims that he fell because of ice on the driveway, not because of the change in slope. Earlier in the evening, of course, the plaintiff had climbed up the same driveway. (Tr. 38–39).

The plaintiff also wishes Dr. Sleight to testify that Mr. Dildy should have warned his guests as they left "by verbal or written message ... that the driveway-walkway was steep, that it was dark outside, and that there is a possibility that the walkway was slippery and to use great care." (Tr. 38, Dr. Sleight's report at 7). Mr. Dildy, however, had no greater knowledge that Mr. Stepney of any factors in the warning proposed by Dr. Sleight. Temperature, illumination, slope and precipitation were equally within Mr. Stepney's knowledge at the time he left. To the extent that Dr. Sleight would suggest some particular hazard caused by the leveling off and then sloping construction of the driveway,

there is nothing to indicate that Mr. Dildy possessed the human factors expertise that would alert him to the "kinesthetic" danger. Nor was Mr. Dildy violating any ordinance or regulation identified by the plaintiff. As stated above, Mr. Dildy's only obligation under Maryland law was to warn his guests of any unreasonable risk of harm of which he was aware and which he could not reasonably expect his guests to discover for themselves. *See also Alexander v. Curtis*, 808 F.2d 337, *reh'g denied*, 820 F.2d 662 (4th Cir.1987) (en banc) (discussing West Virginia law).

See also, D.C., 638 F.Supp. 1301.

Dr. Sleight also suggested that a handrail running down the length of the driveway would have been helpful to Mr. Stepney. (Dr. Sleight's report at 5). He offers no evidence that such a handrail is required or even commonplace. (Tr. 61, 65–66). In any event, the absence of a handrail would have been perfectly apparent to Mr. Stepney.

Accordingly, because Dr. Sleight's opinion is not supported by otherwise demonstrable fact, relates to matters within the common knowledge of the jury, and has the risk of being more prejudicial than helpful to the trier of fact, the defendant's motion in limine will be granted, and Dr. Sleight's proposed testimony will be excluded.

SO ORDERED.

