WILLIAM F. KROL ET UX. *v.* YORK
TERRACE BUILDING, INC. ET AL.

[No. 661, September Term, 1976.]

*Decided March 15, 1977.*

The cause was argued before MORTON, DAVIDSON and
LOWE, JJ.

*Gerald S. Klein,* with whom was *Jerome Blum* on the
brief, for appellants.

*Richard F. Cadigan*, with whom were *David Downes, William Haugh* and *Wells, Durke & Albert* on the brief, for appellees.

Lowe, J., delivered the opinion of the Court.

## The Case

By an opinion dated July 30, 1975, the Circuit Court for Baltimore County indicated that it would grant appellees' motion for summary judgment. An appeal was noted on August 15, 1975, and the case was argued before this Court. On May 20, 1976, by per curiam opinion, we dismissed the appeal as premature because no judgment had been entered. *Krol v. York Terrace Building, Inc.* (No. 856, September Term, 1975). On May 27, 1976, the trial judge ordered judgment to be entered in favor of the appellees pursuant to his prior opinion. On appeal from that judgment the parties were permitted to rely on their original briefs, although we required reargument. We reverse the belated order of the trial court directing the entry of summary judgment.

## The Facts

Appellants, Mr. and Mrs. William F. Krol, agreed to purchase a home to be built by the appellees York Terrace Building, Inc. and Dover Construction Co., Inc.[1] After appellees concluded "building, equipping and completing" it pursuant to contract, the Krols settled for and moved into the house on June 24, 1972. Less than two weeks later, on July 6, while preparing for a dinner party that evening, Mrs. Krol discovered that there was no water, although prior to that time there had been an adequate supply.

The Krols survived the evening's dinner party by the grace of friendly neighbors who loaned them water and stoic guests whose self-restraint or early departure avoided taxing the sanitary facilities. But for the remainder of the year the Krols were forced to survive on water supplied by

---

1. The other appellees are Leroy A. Brandt, John Wm. Armacost, Water, Incorporated, John D. Wells and Austin R. Keyser, Inc.

hoses from neighboring homes and promises from the appellees. On one occasion during this period, appellees' representative offered to dig the well 100 feet deeper in exchange for a release from the Krols, but, presumably once burned, the latter declined the gamble. Finally, in January 1973, appellants contracted with a well digger on their own initiative and at their own expense. The well he dug on the same lot produced an adequate and uninterrupted supply of water.

In May 1973 the Krols sued the appellees for breach of express warranty, breach of implied warranty[2] and fraudulent misrepresentation, all with regard to the inadequate water. The trial judge entered summary judgment against appellants on all three issues.

On appeal appellants contend that there was sufficient evidence or inferences therefrom to provide a real dispute as to the existence of material facts on one or more of the three grounds upon which they sued. Because the evidence clearly shows that this case is subject to statutorily dictated implied warranties and because we find in the record some evidence inferentially indicative of a breach of these implied warranties, we will reverse the judgment entered by the trial court.

## The Standard of Review

It is important to bear in mind that we are reviewing the grant of a motion for summary judgment; we are not reviewing the evidence for sufficiency under the clearly erroneous rule, Md. Rule 1086. In short, we are second-guessing the trial judge upon whether the record contains any evidence of a genuine controversy. The test to be applied, not only by the trial court but by this Court upon review, has so oft been stated that it hardly bears repetition; but it has been no more succinctly phrased than by Judge Levine in *Broadwater v. Arch*, 267 Md. 329, 335,

"We suspect there are few better-settled rules in

---

**2.** The trial judge interpreted the original declaration as alleging breaches of express and implied warranties of adequate water supply, although he observed that the language was equivocal.

this state than that pertaining to the office of a motion for summary judgment. In a line of cases, the citation of which would unduly lengthen this opinion, we have repeatedly held that the summary judgment procedure is not designed as a substitute for trial or for the purpose of deciding an issue of fact, but that it merely provides for a hearing to determine whether there is an issue of fact to be tried.",

nor more clearly articulated than by Judge Powers in *Vanhook v. Merchants Mut. Ins. Co.*, 22 Md. App. 22:

"It is clear that in ruling on a motion for summary judgment the court does not decide disputed facts, but decides whether any real dispute as to material facts exists. *Shatzer v. Kenilworth Warehouses*, 261 Md. 88, 274 A. 2d 95 (1971); *Brown v. Suburban Cadillac, Inc.*, 260 Md. 251, 272 A. 2d 42 (1971). To grant such a motion the court must determine that 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Rule 610 d. 1." *Id.* at 25.

## The Law to Be Applied

As we have indicated in the preliminary recitation of facts, appellants contracted to purchase a house to be built, equipped and completed by appellees. Thus by definition they became entitled to the implied warranties of improved real property sales, as codified at the time of sale in Md. Code, Art. 21, § 10-203. They are "buyers" within the contemplation of § 10-201 (d):

"*Definitions.*

As used in this subtitle, unless the context otherwise requires:

. . .

(d) *'Buyer'* means the *original* purchaser of improved realty, and the heirs and personal representatives of the *original* purchaser." (emphasis added).

Furthermore, no dispute was brought to our attention by any of the appellees (who are the owner-builders and relevant subcontractors) that they do not fit the definition of "Seller" set forth in § 10-201 (c):

"(c) *'Seller'* means any person or corporation whose business it is to erect or otherwise create an improvement upon realty, or to whom a completed improvement has been conveyed for resale in the course of his (its) business."

And certainly the newly constructed house of which the Krols took possession on June 24, 1972, is an "Improvement" within the meaning of § 10-201 (a):

"(a) *'Improvements'* includes all newly con-structed private dwelling units and all fixtures and structures which are made a part of the newly constructed private dwelling units at the time of their construction by building contractors and subcontractors."

Among the several warranties provided in § 10-203 is the warranty that a newly built house be "fit for habitation" for one year from delivery of the deed or completion of the improvement:

"(a) Unless excluded or modified pursuant to subsection (c) of this section, *in every sale warranties are implied that the improvement is*

(1) Free from faulty materials,

(2) Constructed according to sound engineering standards,

(3) Constructed in a workmanlike manner, and

(4) *Fit for habitation,*
*at the time of the delivery of the deed to a com-pleted improvement, or at the time of the com-*

*pletion of an improvement* not completed when the deed is delivered, provided, however, that these warranties do not apply to any condition that an inspection of the premises would have revealed to a reasonably diligent buyer at the time the contract was signed." [3] (emphasis added).

That the life of such warranties is limited to one year is made clear in the next section, § 10-204, although two additional years are permitted for the filing of suit:

"(a) In the event of the breach of any of the several warranties provided for in this subtitle, the court may award such legal or equitable relief, or both, as justice may require.

(b) Except in the case of an express warranty where a longer period of time is specified, *the several warranties provided for in this subtitle shall expire:*

(1) In the case of a dwelling completed at the time of the delivery of the deed to the buyer, *one year after the delivery or after the taking of possession by the buyer,* whichever occurs first, and

(2) In the case of a dwelling not completed at the time of delivery of the deed to the buyer, one year after the date of completion or the taking of possession by the buyer, whichever occurs first.

Any action arising under this subtitle shall be commenced within two years after defect was discovered or should have been discovered or within two years after the expiration of the warranty, whichever occurs first." (emphasis added).

In short, the warranty guarantees that the Krols' new home be

"Fit for habitation at the time ... of the delivery of the deed ....,

---

3. The balance of § 10-203 relates to reliance upon a builder's skill and judgment by virtue of *improvements required for a particular purpose* and the procedure necessary to exclude or modify the implied warranties.

for a period of

" . . . one year after the taking of possession by the buyer."

We were unable to understand why the parties did not argue the applicability of the warranty of fitness for habitation or why that particular warranty was not addressed in the opinion of the trial judge. When discussing the applicability of the "Implied Warranties" the trial judge did not mention the "fit for habitation" warranty in § 10-203 (a) (4), but addressed only the first three warranties in § 10-203 (a) dealing with (1) materials, (2) engineering standards and (3) workmanship. After citing the *Real Property Article* he stated simply:

"In the case at Bar, there is no complaint of faulty materials, improper engineering in the construction, or unworkmanlike construction."

A closer scrutiny of his opinion indicated that the trial judge must have relied upon the current version of the warranties statute (as revised by the Code Revision Commission) presently set forth in Md. Code, Real Prop. Art., §§ 10-202 — 10-205. Presumably, the failure of the trial judge to address the "fit for habitation" warranty arose from the misleading form in which the warranty statute was printed upon revision:

"(a) *Warranties which are implied.* — Except as provided in subsection (b) or unless excluded or modified pursuant to subsection (d), in every sale, warranties are implied that the improvement is:

(1) Free from faulty materials,

(2) Constructed according to sound engineering standards,

(3) Constructed in a workmanlike manner, and

(4) *Fit for habitation; at the time of the delivery of the deed to a completed improvement, or at the time of completion of an improvement not completed when the deed is delivered.*" (emphasis added). Real Prop. Art., § 10-203 (a).

328

The Opinion

Had the judge addressed the statute in Md. Code, Art. 21, § 10-203, *and in the form of its original enactment* in Laws, 1970, Ch. 151, § 1, that oversight might have been avoided by gleaning the meaning made more obvious from the style in which it was set out on the page and which we again set forth here for comparative analysis: [4]

"(a) Unless excluded or modified pursuant to subsection (c) of this section, in every sale warranties are implied that the improvement is

(1) Free from faulty materials,

(2) Constructed according to sound engineering standards,

(3) Constructed in a workmanlike manner, and

(4) *Fit for habitation,*

at the time of the delivery of the deed to a completed improvement, or at the time of the completion of an improvement not completed when the deed is delivered, provided, however, that these warranties do not apply to any condition that an inspection of the premises would have revealed to a reasonably diligent buyer at the time the contract was signed." (emphasis added). Md. Code, Art. 21, § 10-203 (a).

The trial judge appears to have concluded that the warranty of habitability could not apply because adequate water was flowing at the time the deed was delivered, presumably at settlement. However, it is clear that the extended phrase beginning with "at the time" applies to all four warranties set forth in § 10-203 (a) and not, as the form of the revision might suggest, only to the warrant of

---

4. The revision, accomplished by Laws 1974, Ch. 12, § 2, was not effective until July 1, 1974. All the events giving rise to this case occurred in 1972 and 1973. Consequently, Art. 21, not the Real Prop. Art., is applicable here. However, we note that we do not deem the change in form of the § 10-203 (a) in the Real Prop. Art. a substantive change, and the result of this appeal would not be altered if the Real Prop. Art. did apply.

habitability.[5] When that is established, it is apparent that the Legislature would hardly have intended these implied warranties, *all* of which were expressly intended to apply to hidden and latent defects,[6] to be applicable only "at the time of the delivery of the deed . . . ." Such an interpretation would lead to an absurd consequence and we are admonished whenever possible to avoid absurd statutory consequences. See *Fairchild v. Maritime Air Serv.*, 274 Md. 181, 186. Even considering appellees' contention that no one can guarantee a continuation of a natural resource such as water, for us to hold that an implied warranty pertaining to a well expires after the first flush would depreciate the very purpose of that consumer oriented statute.

Section 10-204 (b), which sets forth the life of the warranty, is part of the statutory scheme and must be read together with § 10-203. See *Blumenthal v. Clerk of Cir. Ct.*, 278 Md. 398, 403; *Thomas v. State*, 277 Md. 314, 317. In applying this rule, the obvious intention of the Legislature was to have the effective life of the implied warranties commence "at the time of the delivery of the deed . . ." and to expire "one year after the delivery or after the taking of possession by the buyer . . . ." With this reasonable interpretation, no word, phrase or sentence is rendered surplusage or meaningless, see *Prince George's Co. v. White*, 275 Md. 314, 319; and we will have carried out the *real*

---

5. By Laws 1976, Ch. 572, effective July 1, 1976, the Legislature revised the form of § 10-203 (a) to reflect this intent more clearly:

"(a) *Warranties which are implied.* — Except as provided in subsection (b) or unless excluded or modified pursuant to subsection (d), in every sale, warranties are implied that, at the time of the delivery of the deed to a completed improvement or at the time of completion of an improvement not completed when the deed is delivered, the improvement is:

(1) Free from faulty materials;

(2) Constructed according to sound engineering standards;

(3) Constructed in a workmanlike manner; and

(4) Fit for habitation."

6. § 10-203

"(b) *Exception.* — The *warranties* of subsection (a) do not apply to any condition that an inspection of the premises would reveal to a reasonably diligent purchaser at the time the contract is signed." (emphasis added).

*intention* of the Legislature in enacting the statute, which is the cardinal rule of statutory interpretation. But see *State v. Fabritz*, 276 Md. 416.

With that understanding of the law, we have next to determine whether a newly constructed house without an adequate supply of useable water may be "fit for habitation". In contemporary life, such a postulate is almost itself an absurdity. Furthermore, a water well provided with a contemporary, newly constructed home is clearly a fixture or structure which is made a part of a newly constructed private dwelling unit by the building contractor or subcontractor sufficient to fit the definition of "Improvements" intended to be included under the warranties. See § 10-201 (a), *op. cit.* Although no case has directly addressed that issue in regard to the implied warranty of fitness of habitation, the Court of Appeals had before it on a sufficiency of the evidence question under their clearly erroneous rule, (Md. Rule 886), a case factually apposite to the case at bar.

In *Bosse v. Koehler*, 262 Md. 593, the Court of Appeals held that the evidence was sufficient for a trial judge to have decided in favor of a buyer on surprisingly similar facts to those at bar:

> "Appellant, Hammond E. Bosse (Bosse), a builder, contracted to sell to appellees, Melvin C. Koehler and Jeanette D. Koehler, his wife, (the Koehlers) a home in Anne Arundel County 'to be constructed with workmanship and materials comparable to' a specified home in the same development. Although the contract did not mention water supply, it is conceded that it was intended, as Bosse puts it in his brief, that the Koehlers were to receive 'useable water'.
>
> . . .
>
> The Koehlers made settlement for the property on May 21, 1968, the same day on which the well was drilled. They moved in the first week of June, at which time they found that 'the water was

muddy and sandy.' Upon the advice of Bosse, they let it keep running, but it did not clear up. The well driller returned. Problems continued.

. . .

At some times the water was reported as 'bacteriologically safe for drinking purposes', while at other times it was reported as contaminated. The color of the water seems to have differed substantially from what one normally expects for drinking water." *Id.* at 594-595.

While the Koehlers' problems with the well continued for approximately a year, the water was then found free from contamination, but the Court of Appeals did not disagree with the trial judge that the house owner was justified in having dug a new well and was entitled to recover its reasonable costs:

"A subsequent report relative to a sample taken on April 14, 1969, showed that as of that date the water was free of contamination. That report was forwarded on April 16. By that time the die appears to have been cast, however, because on May 8 a well driller other than the driller employed by Bosse applied to the Department of Water Resources for a permit to drill a well which was completed on May 29, 1969. It ultimately produced a clear, potable water." *Id.* at 596.

Even without direct reference to the implied warranties in *Bosse,*[7] the trial judge's opinion, affirmed and quoted at length by the Court of Appeals, carried the underlying theme

" 'that the best part of a year is a sufficient allowance for a drilled well to work.' " *Id.* at 599.

---

7. It is possible that the original suit was instituted before the implied warranties upon real property statutes were enacted by the Legislature. The effective date of the original enactment was July 1, 1970 and the Court of Appeals' opinion was not filed until June 25, 1971. In any case, the warranties would not have been in force at the time of purchase.

We concur with that principle [8] and interpret the implied warranty statute as making it mandatory.

Although we do not know whether the trial court in *Bosse v. Koehler* decided the case on an express or implied warranty basis or on some other theory, two messages are implicit. First, even the parties conceded that an adequate water supply was intended, although the contract did not mention it. Even without reference to the statutory implied warranties, the Court of Appeals appears to take for granted as an issue beyond dispute, that a newly constructed house should be supplied with useable water. We agree with that underlying philosophy and espouse it here more clearly as the law.

The second *Bosse* message is even clearer. A well providing water for a newly constructed house must provide it in an acceptable quality and the failure to do so is actionable. By analogy there can be little question today that a new home which does not contain an adequate supply of useable water is not "fit for habitation", but even if we assume that issue is open to question, it is certainly one to be decided by a jury, not foreclosed to the factfinder. We accept that teaching from *Bosse* as well.

Having found from the evidence available in the record that the parties and the transaction were subject to coverage by the implied real property warranty, and that an adequate supply of potable water is one prerequisite of fitness for habitation, we have but to note that there was substantial evidence in the record that the well intended to provide the water did not work, except intermittently, after the twelfth day of possession by the Krols. They endured half a year of water hoses from their neighbors' houses during this period of unfulfilled promises from the appellees, before resorting to self-help by having a new well dug. The very failure of an

---

8. But we do *not* agree with that part of the trial judge's opinion quoted by the Court of Appeals which states that it is a very difficult thing to

"'. . . stay in the building business and satisfy a bunch of women [one] is building houses for. There is nothing in this world more obnoxious or picayunish than a woman who has ordered a custom-built house and is close enough to watch it built.'" 262 Md. at 598.

adequate water supply less than two weeks after possession is sufficient evidence that the house was not fit for habitation to create a genuine dispute of fact for trial. However, we hasten to point out that our application of an implied warranty here does not undertake to quantitatively guarantee anything more than an amount of water sufficient to sustain a household for the prescribed period. But see 90 A.L.R.2d 1351, 1353-1355. What amounts to an adequate supply is also a problem of persuading the factfinder.

### The Conclusion

We do not hold that the implied warranty was breached. We hold only that there was sufficient evidence or inferences therefrom, from which a factfinder could so find, and that is the test to be applied on summary judgment questions. In *Vanhook, supra,* Judge Powers also pointed out that:

> "In ruling on a motion for summary judgment, as we said in *Knisley v. Keller,* 11 Md. App. 269, 273 A. 2d 624 (1971) at 272-273:
>
>> 'The function of the judge is much the same as that he performs at the close of all the evidence in a jury trial when motions for directed verdict or requests for peremptory instructions require him to determine whether an issue requires resolution by a jury, or is to be decided by the court as a matter of law.' "

*Id.* at 25-26.

In *Mass Transit Adm. v. Miller,* 271 Md. 256, 259, the Court of Appeals said:

> " 'Maryland has gone almost as far as any jurisdiction that we know of in holding that meager evidence of negligence is sufficient to carry the case to the jury'; that the rule requires submission of the case to the jury if there be any evidence, however

slight, legally sufficient as tending to prove negligence, the weight and value of such evidence being left to the jury; . . . .' "

It follows that, if such meager evidence is sufficient to carry a case to a jury over a motion for directed verdict, *Knisley v. Keller, supra,* it should take no more to overcome a motion for summary judgment.

*Judgment reversed.*
*Costs to be paid by appellees.*