## RALPH PRITTS & SONS, INC. *v.* WILLIAM C. BUTLER ET UX.

[No. 1387, September Term, 1978.]

*Decided July 13, 1979.*

The cause was argued before THOMPSON, LISS and COUCH, JJ.

*Hugh H. McMullen,* with whom were *Geppert, McMullen & Paye* on the brief, for appellant.

*Leo William Dunn, Jr.,* with whom were *Manuel A. Palau* and *Dunn & Emig, P.A.* on the brief, for appellees.

LISS, J., delivered the opinion of the Court.

The appellant in this case is Ralph Pritts and Sons, Inc., a body corporate of the State of Maryland, which operates an automotive repair shop in Oakland, Garrett County, Maryland. The appellees are William C. Butler and Barbara Ann Butler, his wife, who sued the appellant in the Circuit Court for Garrett County for the personal injuries sustained by Mr. Butler and for the loss of consortium alleged by his wife, arising out of an explosion which occurred on January 8, 1977. The explosion involved a lift apparatus located in the appellant's garage which was being used after normal business hours by the appellee and an employee of the appellant.

At trial before the trial judge and a jury, the parties offered testimony which raised substantial issues of fact for determination by the jury. The testimony offered at trial was as follows: Howard Fulk was a regular, full-time employee of the appellant. The appellee, William C. Butler, was a longtime customer of the appellant's garage who had previously bought several automobiles from Fulk in his capacity as an employee and salesman for the appellant. The appellee, in the past, had automotive work performed on his vehicles at the garage. Sometime in December, 1976, Fulk, using a vehicle belonging to the appellant, drove the appellee to a parts shop located in Cumberland, Maryland. While there, the appellee had Fulk purchase a winch which he wanted installed on one of his vehicles. As Butler did not have sufficient cash with him to pay for the winch, the equipment was charged to the account of the appellant. Fulk and Butler returned to the appellant's garage and deposited the winch where it remained undisturbed for a month. The understanding between Butler and Fulk was that Butler was to be billed for the winch, however Butler insisted that before

he would pay the bill, Fulk would be required to install the winch on Butler's truck. Fulk testified that he intended to install the winch "some Saturday evening after I got off work and the garage was closed."

Evidence was produced to the effect that the appellant had permitted its employees to work on their own cars at the appellant's garage after hours and on weekends, and that the employees were authorized to use the equipment at the garage while repairing their own vehicles. Appellant indicated that the employees had been advised that this privilege extended only to the employee-owned vehicles. However, Fulk testified that he knew of no company policy which precluded him from working on the appellee's car after hours in the company garage. He stated further that he had notified the general manager that he had purchased the winch for Butler, that he had charged it to the company's account, and that he proposed to install the winch on the appellant's car on his own time, after hours. The general manager denied having any recollection of receiving such information from Fulk.

In any event, on January 8, 1977, at approximately 5:00 P.M., when the garage was closed for regular business, Fulk, Butler and several of his friends undertook to install the winch on Butler's truck. The vehicle was placed on a hoist which was operated by Fulk. Butler testified that there was suddenly a loud explosion which "rose from underneath me," and that the force of the explosion caused the deck plate, which covered the hydraulic container of the lift, to strike the appellee in the leg, causing his leg to collapse underneath him and causing him to be thrown six to eight feet from the truck. As a result of the explosion, the appellee alleged that he sustained serious personal injuries, which required extensive medical treatment, that he lost large sums of wages and that he and his wife suffered a loss of consortium.

Appellant moved for a directed verdict at the conclusion of the plaintiff's case and at the close of all the evidence. Both motions were denied, and the case was submitted to the jury which after deliberation returned a substantial verdict in favor of the appellees. The trial judge denied motions for a

judgment *n.o.v.* and a new trial, and it is from these several judgments that this appeal was filed.

Appellant presents four questions to be decided by this appeal. We shall not consider them in the order suggested by the appellant but will instead consider the issues in the following sequence:

1. Did the court below err in instructing the jury that they could consider the plaintiff a business invitee while on the defendant's premises?

2. Is the doctrine of *res ipsa loquitur* applicable in the instant case?

3. Was there sufficient evidence of negligence on the part of the defendant to warrant submission of the case to the jury?

4. Did the court err in instructing the jury that they could consider lost wages of the plaintiff?

## 1. *Business Invitee*

Appellant vigorously contends that the trial court erred in submitting to the jury the question of whether the appellee was a business invitee on the appellant's premises where he sustained the injuries complained of in this case.

The Court of Appeals, in *Bramble v. Thompson,* 264 Md. 518, 521, 287 A. 2d 265 (1972), gave a concise and lucid explanation of the duties of the owners of real property to invitees, licensees, and trespassers [1] as follows:

> The liability of owners of real or personal property to an individual injured on their property is dependent on the standard of care owed to the

---

1. In Sherman v. Suburban Trust Co., 282 Md. 238, 384 A. 2d 76 (1978), the Court of Appeals, speaking through Chief Judge Murphy, held that the question whether Maryland should adopt a general negligence standard for owners of real property was not properly before the Court for review. In a dissenting opinion, Judge Levine expressed the view that the issue was properly before the Court and urged that the common law classifications of invitee, licensee and trespasser should be abolished in favor of a general negligence standard. This issue was not raised nor argued below in the case at bar, nor was it presented to us by brief or oral argument. We must conclude that any change in the common law rules we have here stated must await another day.

individual and that in turn is contingent upon a determination of the individual's status while on the property, *i.e.,* whether he is an invitee, licensee, or trespasser. An invitee is one invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business. The owner must use reasonable and ordinary care to keep his premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover. [Citations omitted.] A licensee is one privileged by virtue of proper consent to enter for his own purpose or convenience onto another's property. There are two types of licensees, a bare licensee and a licensee by invitation. A bare licensee takes the property as he finds it and, like a trespasser, he is owed no duty by the owner except that he may not be wilfully or wantonly injured or entrapped by the owner once his presence is known. [Citations omitted.] A licensee by invitation is a social guest who takes the premises as his host uses them. In general, the legal duty owed him by the host is to take the same care of the guest as the host takes of himself or members of his family. He must exercise reasonable care to make the premises safe for his guest or he must warn him of known dangerous conditions that cannot reasonably be discovered and which in fact are not discovered by the guest. [Citations omitted.] A trespasser is one who intentionally and without consent or privilege enters another's property. [Citations omitted.] The only duty of care a property owner owes to a trespasser, even one of tender years, is to refrain from wilfully or wantonly injuring the intruder. [Citations omitted.]

The appellee contends, justifiably we believe, that there was evidence from which the jury could have found that the appellee was a business invitee on the premises of the appellant when his injuries were sustained. There was

testimony, which if believed, established the fact that Fulk extended a specific invitation to the appellee to come to the appellant's premises to have the winch installed. The testimony further showed that Fulk had been employed by the appellant for more than five years and had performed a variety of functions for the appellant including being a shop foreman and salesman, and purchasing parts. In addition, Fulk testified that when he agreed to install the winch after hours, he was aware of no regulations or policies of the appellant which precluded such action on his part. He stated that it was not unusual for this type of work to be performed in the evening, and that he had apprised the general manager of what he proposed to do without receiving any objection. That the arrangement was not unusual was substantiated by the general manager who testified concerning the use of the garage after hours. He stated that "several of the employees brought other people's cars in and worked on them. We didn't say anything to them about it, no."

It seems clear to us that on this state of the record, the trial court was eminently correct in submitting to the jury the question of whether Fulk had the actual authority to expressly invite the appellee to the appellant's place of business on the fateful Saturday evening. Nor may the appellant avoid responsibility for the acts of his employee by relying on restrictions on the acts of the employee unknown to the persons dealing with that employee. As the Court of Appeals said in *Banks v. Montgomery Ward & Co.,* 212 Md. 31, 43, 128 A. 2d 600 (1957), "[i]t is held generally that an employer cannot escape liability for the acts of his agent by placing limitations on his authority not known to others dealing with him nor properly inferable from the nature of his employment."

We conclude that there was evidence from which the jury could conclude that the appellee in this case acquired the status of a business invitee by way of Fulk's express invitation. Even if, *arguendo,* we were to decide that there was no sufficient express invitation, we believe that the appellee would, nevertheless, be a business invitee by implication.

The Court of Appeals, in *Crown Cork & Seal Co. v. Kane,* 213 Md. 152, 131 A. 2d 470 (1957) held that a person on another's premises could be a business invitee because of an implied invitation. The defendant in that case contended that the plaintiff was not an invitee or business visitor when he was injured on the defendant's premises because the plaintiff was not acting for the mutual benefit of the defendant "or promoting any business interest of the owner, but [that he was] acting solely for his own personal pleasure and benefit." *Id.* at 158. In commenting on this defense, the Court said:

> The cases all recognize that an invitation may be express or implied, and there are many cases in which an invitation has been implied from circumstances, such as custom, the acquiescence of the owner in habitual use, the apparent holding out of premises to a particular use by the public, or simply in the general arrangement or design of the premises. [*Id.* at 159.]

*See Gray v. Sentinel Auto Parts Co.,* 265 Md. 61, 288 A. 2d 121 (1972); *Woodward v. Newstein,* 37 Md. App. 285, 377 A. 2d 535 (1977).

Appellant urges that *Crown Cork, supra,* is inapplicable because there was no evidence of a pecuniary or economic benefit to the appellant flowing from the installation of the winch in the case at bar. The Court of Appeals, in discussing the nature and type of the benefit contemplated in *Crown Cork,* noted that "the cases which proceed on the benefit theory rely, in many instances, upon rather remote and indirect benefits." 213 Md. at 159. In the present case, there was evidence to indicate that the appellee was an old and valued customer who had dealt with the appellant on a number of occasions and whose continued good will might well ensure future beneficial transactions between the appellant and appellee. In addition, evidence was adduced regarding a more direct pecuniary benefit to the appellant. Appellee testified that in addition to purchasing the winch, he intended to buy from the appellant a battery, clamps and other accessories required for installation of the winch. Obviously, such

purchases would amount to sufficient pecuniary benefit to the appellee to bring this case under the aegis of *Crown Cork.*

The jury concluded that the appellee was a business invitee either expressly or impliedly, and in both regards the appellant's duty was to use reasonable and ordinary care to keep his premises safe for the invitee and to protect the invitee from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, would not discover.

## 2. *Res Ipsa Loquitur*

Appellee, in his brief and argument, urged that there was sufficient direct evidence of negligence on the part of the appellant to require the case to be submitted to the jury. He reserved for himself, however, a fall-back position contending that even if there were insufficient evidence of direct negligence, that the facts and circumstances surrounding this accident were sufficient to raise an inference of negligence under the doctrine of *res ipsa loquitur.* The jury, he contends, had a right to weigh that circumstantial evidence even though it might not have been required to accept it as sufficient to establish the appellant's negligence. *See Munzert v. American Stores,* 232 Md. 97, 192 A. 2d 59 (1963).

We shall not decide the issue whether *res ipsa loquitur* is applicable in this case because we conclude that there was sufficient evidence of direct negligence to require the issue to be submitted to the jury.

## 3. *Sufficiency of the Evidence of Negligence*

The standard of appellate review to be employed where a motion for a directed verdict has been ruled upon by the lower court involves a resolution of the question as to whether there is any legally relevant and competent evidence, however slight, from which a rational mind could infer a fact in issue which, if present, would warrant a finding that the trial court invaded the province of the jury by declaring a directed verdict. In such circumstances, the case should be submitted

to the jury and a motion for a directed verdict denied. *Impala Platinum, Ltd. v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 389 A. 2d 887 (1978). Maryland Rule 552 requires submission of a case to the jury if there be *any* evidence, however slight, legally sufficient as tending to prove negligence, the weight and value of such evidence being left to the jury. *Keene v. Arlan's Department Store of Baltimore, Inc.,* 35 Md. App. 250, 370 A. 2d 124 (1977); *Krol v. York Terrace Bldg., Inc.,* 35 Md. App. 321, 370 A. 2d 589 (1977). And meager evidence of negligence is sufficient to carry the case to the jury. *Beahm v. Shortall,* 279 Md. 321, 368 A. 2d 1005 (1977).

Mr. Albert Paye, who was called by the appellee as an expert witness, stated that the explosion of the hydraulic lift resulted from a failure of the weld that attached the dished head of the lift to the cylindrical portion of the reservoir of the hoist. Paye observed that the failure occurred because of the deterioration of the exterior metal surface of the tank which he concluded was caused by water accumulating in the bottom of the hoist pit.

Paye testified, in part, as follows:

> Q. Now Mr. Paye, as a result of your investigation or a result of the information that you acquired, do you have an opinion, based on your engineering expertise with reasonable probability, as to what was the cause of this particular explosion on the 8th day of January, 1977? A. If I may refer to my report and notes which I have here to answer that.
>
> Q. Yes, you may. A. Because it's rather cumbersome — cumbersome response. Plausibly, the circumferential weld attaching the bottom dished head to the cylindrical section of the hydraulic fluid reservoir failed due to deterioration of the metal in the exterior surface of the tank probably due to galvanic action or corrosion. Visual inspection of the interior surface of the tank indicated that it was smooth and well preserved. However, the exterior surface of the tank especially in the vicinity of the bottom dished head weld does show marked pitting.

Similar pitting is not evident in the area of the top dished head weld. Is this —

Q. Yes, I think also in that particular report, the last paragraph of that particular report, you have arrived at a conclusion. A. These observations lead to the conclusion that there was a complete failure of the weld that fastened the bottom dished head to the cylindrical section of the hydraulic fluid reservoir.

As to the cause of the deterioration of the tank metal and the weld, my inquiries reveal that water often accumulated in the bottom of the pit. This water came from floor washings and from melting snow and ice.

Q. Go ahead and finish it, sir. A. I'd have to quote employees here which I think Judge Thayer ruled out.

Q. No, I don't think he ruled that out specifically. You can answer that. A. Employees said that they pumped the pit —

(Mr. McMullen) Objection, your Honor.

(The Court) Yes, sustained.

By Mr. Dunn:

Q. Does your investigation reveal any policy as to how often the people at Ralph Pritts & Sons would pump out this particular — A. No, I didn't find out, they said they did from time to time.

In addition to the testimony that corrosion was visible on the exterior surface of the hoist, there was also testimony to the effect that water accumulation had been cleared by the appellant's employees "from time to time" from the bottom of the hoist pit. Thus, it is apparent that the appellant was aware of the water situation and knew or should have known of the visible exterior corrosion that ultimately resulted in the mishap. As the appellee was a business invitee, the appellant owed him a duty to use reasonable and ordinary care to keep his establishment safe and to protect the invitee from any

unreasonable risk he would not discover on his own. *Bramble v. Thompson, supra.* While the proprietor will not be held negligent for defects of which he had no notice and which were not or could not have been disclosed by proper inspection, he is responsible for resultant injury adjunct to a breach of his duty of ordinary care. *See Sherman v. Suburban Trust Co.,* 282 Md. 238, 384 A. 2d 76 (1978).

Considering the state of the evidence and the standard of care required to be employed, the motion for a directed verdict was properly denied, and the consideration of the case was correctly submitted to the triers of the facts.

### 4. *Jury Instruction—Lost Wages*

At the conclusion of the trial, the judge instructed the jury, in part, as follows:

> You may consider the personal injuries sustained by the plaintiff and their extent and duration; the effect such injuries have on the over-all physical and mental health and well-being of the plaintiff; the physical pain and mental anguish suffered in the past, and which with reasonable probability may be expected to be experienced in the future; the disfigurement and humiliation or embarrassment, if any, associated with such; the medical and other expenses reasonably incurred in the past, and which with reasonable probability may be expected in the future; the loss of earnings, if any, in the past, and such earnings or reduction in earning capacity which with reasonable probability may be expected in the future.

It is clear from our perusal of the record that the appellee pressed no claim for loss of employment at trial. During the course of the trial, counsel for the appellee stated, while conducting the direct examination of his client in the presence of the jury, "that you are not making any claim for loss of employment." Therefore, despite the subsequent instruction to the contrary, the jury was informed that no basis existed for a lost wage claim.

The court further instructed the jury that:

> I want to advise you that the fact that I have instructed you on the issue of damages must not be considered by you as any indication of the plaintiff's right to recover damages or is any indication of my view on the issue of liability or as to which party is entitled to your verdict. I have instructed you on the issue of damages to guide you in the event that you *find from the evidence* that the plaintiff is entitled to recover damages, since it is my duty to instruct you fully on all of the law in this case. (Emphasis supplied.)

As the jury had no evidence of loss of employment before it and was specifically instructed to base its finding solely on the evidence, we find the reference to earning capacity in the instruction was harmless error.

The Court of Appeals has said on numerous occasions that in considering a trial court's instructions to a jury the instructions must be considered as a whole. *See Henry v. State,* 273 Md. 131, 150, 328 A. 2d 293 (1974); *Wood v. Abell,* 268 Md. 214, 235, 300 A. 2d 665 (1973). In *Baltimore & O. R.R. v. Plews,* 262 Md. 442, 462-63, 278 A. 2d 287 (1971), the Court quoted Judge Prescott in *Wilhelm v. State Traffic Comm.,* 230 Md. 91, 185 A. 2d 715 (1962), which is applicable here:

> [W]e have said that the trial court's instructions must be considered as a whole; that the charge need not comply with the technical rules of formal written prayers; that this Court will not be overly critical of the words used by the trial judge if the result is sufficient, *Lloyd v. Yellow Cab Co.,* 220 Md. 488, 154 A. 2d 906; and, even if an erroneous instruction were given, it did not constitute a ground for reversal in the absence of prejudice, *Connor v. State,* 225 Md. 543, 171 A. 2d 699. *Id.* at 102.

The instruction in the present case as to wages was erroneous, but the error was harmless.

*Judgment affirmed, costs to be paid by appellant.*