# FRANCES E. MURRAY v. WILLARD LANE ET AL.

[No. 1267, September Term, 1981.]

*Decided May 7, 1982.*

The cause was argued before GILBERT, C. J., and MOORE and WILNER, JJ.

*John E. Kelly* for appellant.

*Charles S. Keyes* for appellees.

WILNER, J., delivered the opinion of the Court.

A jury in the Circuit Court for Harford County decided that appellees, as owners of the Haven Lane Restaurant and Lounge, had failed to keep their premises in a reasonably safe condition, and thus were responsible for damages suffered by appellant when she fell through a second-story outdoor railing. That determination led to a verdict in favor of appellant in the amount of $30,000.

Appellant's victory was short-lived. On May 26, 1981, the court granted a motion for judgment *non obstante verdicto* (N.O.V.), and thereby erased the jury's verdict and entered judgment in appellees' favor. The correctness of that action is the issue presented to us in this appeal.

In reviewing the granting of a judgment N.O.V., the evidence and all reasonable inferences from it must be considered in the light most favorable to the party opposing the motion. As stated in *Impala Platinum Limited v. Impala Sales (U.S.A.), Inc.,* 283 Md. 296, 327 (1978), "[a] party is not entitled to judgment n.o.v. unless the facts and circumstances so considered are such as to permit of only one inference with regard to the issue presented," that inference favoring the cause of the motion's proponent. The evidence, viewed in that light, established the following.

At about 5:30 in the evening of June 10, 1976, appellant, a 20-year old single woman, received a call from one David Holtz, who asked if she could meet him later that evening. Appellant had met Mr. Holtz through some friends a few days earlier, and had gone on a dinner date with him the previous evening. Mr. Holtz told her that he had to work late, and that he would meet her at the Haven Lane Restaurant and Lounge, which was where he was residing. Haven Lane, though primarily a lounge, had rooms on the second floor which were rented on a weekly basis. Holtz was with a group of Philadelphia utility company employees temporarily working in the area, which accounted for his residence in such quarters. Appellant was told to meet Holtz in the bar, but, if he was not there when she arrived, she was to walk up to his room.

Appellant arrived at the lounge about midnight, having spent the earlier evening hours with some girlfriends. Holtz was not there, so, after a few minutes and in accordance with his instructions, she left the lounge and ascended an outdoor staircase leading to the second floor. That staircase was the only means of access to the second floor rooms. At the top of the stairs was a platform which led to a door. Appellant opened the door, entered a hallway, and called out Holtz's name. When no one responded, she went back outside on to the platform. While waiting there, a man, whom she did not recognize, called to her from below. The area was unlit; appellant was alone, and she became "nervous." She happened to lean on the wood railing that surrounded the platform and it immediately gave way, causing her to fall seventeen feet to the ground. She sustained serious, painful, and permanent injuries from the fall.

Although appellees denied that the railing was defective or that they had knowledge of any defect in it, there was evidence sufficient to show that both were the case. The jury could properly find that the wood railing was rotten and weak, that it had been that way for quite some time, and that appellees knew or reasonably should have known of its condition.

Appellee Willard Lane testified that the second floor rooms were rented on a weekly basis and that he had verbally instructed his tenants, including Holtz, that "no women would be allowed upstairs as it was not good publicity and it could cause trouble." Neither Lane nor anyone else explained whether that meant no women were to be admitted in the rooms upstairs or no women were to be allowed even on the platform outside the entranceway to the rooms. No signs were posted anywhere in the vicinity warning that women were not allowed "upstairs." The policy, such as it was, was a verbal one communicated by Lane directly to his tenants, and apparently to no one else. Appellant was not aware of any such policy. She went upstairs to meet Holtz because that is what he asked her to do.

The court concluded, both in its instructions to the jury and in its granting of the judgment N.O.V., that appellant's

right to recover was largely dependent upon her "status" *vis a vis* appellees. In that regard, Maryland continues to follow the rule explicated in *Bramble v. Thompson,* 264 Md. 518 (1972), which recognizes a lesser duty owed by property owners to persons regarded as mere "licensees" or trespassers than is owed to persons deemed to be "invitees." *See Sherman v. Suburban Trust Co.,* 282 Md. 238 (1978); *Murphy v. Baltimore Gas and Electric Company,* 290 Md. 186 (1981).

An "invitee" is a person "invited or permitted to enter or remain on another's property for purposes connected with or related to the owner's business," and, as to him, the owner "must use reasonable and ordinary care to keep his premises safe ... and to protect him from injury caused by an unreasonable risk which the invitee, by exercising ordinary care for his own safety, will not discover." *Sherman, supra,* at 242. A licensee is a person "who enters the property with the knowledge and consent of the owner but for his own purposes or interest," and, as to him, the owner owes no duty "except to abstain from wilful or wanton misconduct or entrapment." *Id.,* 242. A trespasser, of course, is one who enters or remains on another's property without authority or consent. Under current law, he is in the same status as the "licensee"; the property owner owes him no duty except to abstain from wilful or wanton misconduct or entrapment. *See Murphy, supra; also Macke Laundry Service Co. of Maryland v. Weber,* 267 Md. 426 (1972).

As we have already observed, the evidence in this case sufficed to show that the wood railing on the second floor platform was rotten and thus defective and that appellees knew or should have known of its defective condition.[1] Thus, if appellant was an "invitee," rather than a "licensee" or

---

[1] In its Memorandum Opinion issued with respect to the judgment N.O.V., the court stated that "there was no evidence that the landowners [appellees] were aware that the railing on the landing was defective, and therefore there was no reason for the landowners to post this property or to call attention to the condition of the railing." That statement is not entirely correct. Although Mr. Lane denied knowledge of the defect, there was plenty of evidence from which a contrary inference could reasonably be drawn.

trespasser, there can be little doubt that the jury's verdict was a proper one and that the judgment N.O.V. was inappropriate. *See, in general,* Annot., *Landlord's Liability for Injury or Death Due to Defects in Exterior Stairs, Passageways, Areas, or Structures Used in Common by Tenants,* 26 A.L.R.2d 468 (1952). In granting the judgment N.O.V., the court acted primarily on the basis that appellant was not an "invitee," but only a "licensee." This, in turn, was based entirely on Mr. Lane's testimony with respect to his "no women upstairs" policy. The court reasoned that, in light of that policy, which had been communicated to Holtz, Holtz "had no authority to invite female guests to his room," and thus appellant could not legally be regarded as an invitee either of Holtz or of appellees.

We disagree.

It is important, in the first instance, to note that appellant's "status" as invitee, licensee, or trespasser does not necessarily depend upon any direct relationship with appellees. Her invitation to use the stairway and platform came from appellees' tenant, Holtz; and, if appellant was an invitee or licensee of Holtz, she is to be regarded as the invitee of appellees as well, even if they were unaware of her presence. The law in that regard is well stated in Restatement of Torts 2d, § 360 (1965), which the Court of Appeals adopted in *Sezzin v. Stark,* 187 Md. 241 (1946); *see also Ross v. Belzer,* 199 Md. 187 (1952):

> "A possessor of land who leases a part thereof and retains in his own control any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee *and others lawfully upon the land with the consent of the lessee* or a sublessee for physical harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe." (Emphasis supplied.)

See also *Landay v. Cohn,* 220 Md. 24, 27 (1959):

> "Where a landlord leases separate portions of a property to different tenants and reserves under his control halls, stairways or other parts of the property for use in common by all the tenants, he must use ordinary care and diligence to maintain the retained parts in reasonably safe condition. . . . The duty stems from the responsibility engendered in the landlord by his having extended an invitation, express or implied, to use the portions of the property retained by him. . . . *Such an invitation extended to a tenant includes the members of his family, his guests, his invitees and others on the land in the right of the tenant."* (Citations omitted; emphasis supplied.);

and *Macke Laundry Service Co. of Maryland v. Weber, supra,* 267 Md. 426 at 429-30.

Several of the explanatory comments to Restatement § 360 are of particular relevance here. Comment c expresses the point noted above — that where the person enters the premises at the behest or with the consent of the lessee, his privilege

> "is not based, as is that of the lessor's own invitee or licensee, upon the consent given upon the occasion of the particular visit, but upon the fact that he is entitled to enter by the right of the lessee, who is entitled under his lease to use the part of the land within the control of the lessor not only for himself, but also for the purpose of receiving any persons whom he chooses to admit."

Thus, as further explained in comment f,

> "[i]f the terms of the lease entitle the lessee to permit third persons to come upon the part of the land retained within the lessor's control, it is immaterial whether they come as invitees of the lessee or as his licensees. It is the lessor's business, as such,

to afford his lessee facilities for receiving all persons whom he chooses to admit for any legitimate purpose. Therefore, a person who, as between himself and the lessee, is a licensee enters the land on a matter directly connected with the business of the lessor."

Comment e recognizes that a landlord may, in his lease, restrict the tenant's authority to invite or permit third persons to use those common areas of the premises retained under the landlord's control, and thus limit his liability for accidents occurring in those areas. It states, in relevant part:

"[T]he lessor is subject to liability to such persons only as the lessee, under the expressed or implied conditions and terms of the lease, is entitled to admit to such part of the land. Stairways, halls, elevators, and other common approaches to an apartment or office, are provided not only for the use of the lessee but also for the use of such persons as the lessee chooses to receive in his apartment or office. On the other hand, the lessee may be entitled to the use of a yard in common with other lessees for a variety of different purposes. If these purposes do not include the reception of licensees therein, a third person entering the yard at the invitation of the lessee is not lawfully there and is not within the protection of the rule stated in this Section."

Comment e is obviously restrictive in scope. It seeks to distinguish between common areas providing access to the rented apartments or offices, which invitees or licensees of the tenants are expected and are likely to use, and those special areas set aside for tenants alone or otherwise having restricted access from which others may properly and practicably be excluded. *Cf. Levine v. Miller,* 218 Md. 74 (1958), *and compare Black v. Nelson,* 532 P.2d 212 (Utah 1975).

Even if the theory underlying comment e were construed to permit the landlord to exclude a particular person or class

of persons from general access areas rather than merely to exclude non-tenants from a clearly defined and specially restricted area, as comment g makes clear, "[s]uch a clause does not, however, affect the lessor's liability to third persons, such as invitees or guests of the lessee, who are not parties to the contract nor in privity with it." *See also Ralph Pritts & Sons, Inc. v. Butler,* 43 Md.App. 192, 197 (1979).

We are not concerned here with the validity of appellees' "no women upstairs" policy. Presumably, they could have evicted Holtz for its violation. But absent some evidence (of which there was none) that appellant knew or reasonably should have known of that policy, and thus was aware that she was not authorized to go up to the second floor, she cannot be regarded as anything but what she in fact was — a social guest of Holtz and thereby a business invitee of appellees.

Holtz's lack of authority to extend such an invitation can in no way be binding upon appellant if she was not aware of it. The rule laid down in *Banks v. Montgomery Ward & Co., Inc.,* 212 Md. 31, 43 (1957), which we quoted and applied in *Ralph Pritts & Sons Inc., supra,* is clearly applicable here. As "an employer cannot escape liability for the acts of his agent by placing limitations on his authority not known to others dealing with him nor properly inferable from the nature of his employment" *(Banks, supra,* at 43), so a landlord cannot escape liability to invitees or licensees of his tenants by placing limitations on the tenant's authority to permit such persons onto the property that are not either known to such persons or properly inferable from the circumstances. *Cf. Butler v. Watson,* 159 N.W. 507 (Mich. 1916); *Valentin v. D. G. Swanson & Company,* 167 N.E.2d 14 (Ill.App. 1960); *Ragland v. Rooker,* 183 S.E.2d 579 (Ga.App. 1971), *overruled on other grounds Country Club Apartments, Inc. v. Scott,* 271 S.E.2d 841 (Ga. 1980); *Vernon Fire & Casualty Insurance Co. v. Graham,* 336 N.E.2d 829 (Ind.App. 1975); Annot., *Effect, On Nonsigner, Of Provision Of Lease Exempting Landlord From Liability On Account Of Condi-*

*tion Of Property,* 12 A.L.R.3d 958 (1967). Any other rule would be unwise and unfair.[2]

The court erred in finding appellant to be anything but a business invitee of appellees and, in consequence thereof, erred further in entering the judgment N.O.V.

> *Judgment reversed; case remanded to Circuit Court for Harford County with instructions to enter judgment for appellant based on jury's verdict; appellees to pay the costs.*

---

**2.** In light of that conclusion, which is dispositive of the appeal, we need not address the additional questions of (1) whether the court properly found that there was, in fact, a "no women upstairs" policy — whether the evidence in that regard was "such as to permit of only one inference with regard to the issue presented"; (2) whether, since appellant never entered Holtz's room and was never in his company upstairs, the court properly found that she had violated such a policy; or (3) whether the distinctions currently drawn between the duty owed to invitees and that owed to licensees should be abolished.